UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                    Docket No. 23-cr-00112-PB-AJ

CHARLES GLENN


**Memorandum in Support of Motion to Suppress Evidence**

**INTRODUCTION**

The defendant, Charles Glenn, was indicted on December 6, 2023, and charged with one count of Transmitting a Threatening Interstate Communication, in violation of 18 U.S.C. § 875(c), and one count of Mailing a Threatening Communication, in violation of 18 U.S.C. § 876(c) (ECF No. 1). The charges arise from alleged communications he made to his former attorney. A superseding indictment was filed on August 21, 2024 (ECF No. 17).

Glenn has filed a motion to suppress evidence claiming that the evidence was seized in violation of the Fourth, Fifth, and Sixth Amendments to the United States Constitution, and 18 U.S.C. §§ 2510-2522. This memorandum is filed in support of the defendant's motion to suppress, pursuant to L.R. 7.1(a)(2).

**FACTUAL BACKGROUND**

Charles Glenn was convicted in the state of New Hampshire on June 19, 2012 for, inter alia, second degree murder. State of New Hampshire v. Glenn, 216-2006-CR-02159. On September 5, 2012, he was sentenced to 30 years to life in the New Hampshire State Prison. Atty. M. was retained by Charles Glenn in the Spring of 2020 to advance a federal petition under 28 U.S.C. § 2254 for post-conviction relief regarding the state conviction.

See Glenn v. NH Department of Corrections, 16-cv-00006-SE. At the time, Glenn was incarcerated at the New Hampshire State Prison for Men ("NHSP-M") in Concord, New Hampshire.

At some point during 2020 the relationship became contentious, and on August 19, 2020, Atty. M. moved to withdraw Atty. M's appearance, which was allowed, (ECF No. 66 (sealed)), and Atty. Stanley W. Norkunas was appointed. Following the withdrawal of Atty. M.'s appearance, Atty. M. had further communication with Glenn, both in person at the prison and by phone. On September 24, 2020, Atty. Norkunas moved to withdraw due to the inability to establish an attorney-client relationship, ECF No. 76, and the matter was scheduled for a hearing regarding status of counsel on October 5, 2020. Atty. M. appeared at the hearing, was re-appointed, and resumed Atty. M.'s representation.

During this second period of representation, there were phone calls and in-person meetings. The relationship again became contentious, and on December 1, 2020, Glenn allegedly made a phone call to Atty. M. and threatened to kill one of Atty. M.'s children. Atty. M. hung up and called the police and the New Hampshire State Prison, and filed an Expedited Motion to Withdraw as Attorney (ECF No. 92 (sealed)). At a hearing on December 4, 2020, the motion was granted. (See ECF No. 95).[1] Mr. Glenn was indicted on the current charges on December 6, 2023.

---

[1] The § 2254 matter remains open; Mr. Glenn is currently represented by Atty. Donald A. Kennedy.

# ARGUMENT

I.  **This Court Should Suppress the Intercepted Attorney/Client Calls**

   A.  **The Intercepted Communications Between Glenn and His Counsel Are Protected From Disclosure and Dissemination by the Attorney-Client Privilege**

Atty. M. was Glenn's attorney from Spring 2020 to August 18, 2020, and again from October 6, 2020 to December 4, 2020.  It is clear from before the outset of the first intercepted call in 2020 that they had an attorney-client relationship. In the course of that representation, Atty. M. and Mr. Glenn spoke several times by phone and met at least once. Those communications concerned legal strategy and legal advice. Moreover, Glenn specifically requested that Atty M.'s number be registered as his attorney's.  (See Ex. No. 1, filed under seal).  All of these calls is protected by the privilege.

The attorney-client privilege is not only an evidentiary rule.  Rather, it plays a broader and more central role in our adversarial legal system.  It has been described as "the most sacred of all legally recognized privileges." United States v. Bauer, 132 F.3d 504, 510 (9th Cir. 1997).

> The attorney-client privilege is one of the oldest recognized privileges for confidential communications.  The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote the broader public interest in the observance of law and the administration of justice."

Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).

More than 120 years ago, the U.S. Supreme Court observed that the privilege is founded upon "the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." Hunt v. Blackburn, 128 U.S. 464, 470 (1888).  Thus, the privilege serves the

public interest as well as private interests. "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co., supra, 449 U.S. at 389. Disclosure of confidential calls to potential or actual adversaries, the government, or even just random third parties would defeat these goals by causing clients not to be frank and forthright with their lawyers. The federal common law privilege is so important that it bars disclosure of attorney-client communications even after the client's death. See Swidler & Berlin, supra, 524 U.S. at 410-11 (holding the trial court should quash a criminal grand jury subpoena for a lawyer's notes of his conversations with his now-deceased client). The privilege against disclosure is the same, whether the disclosure is sought in civil or criminal cases, id. at 408-09, and whether or not the communication may involve admission of criminal wrongdoing. The privilege bars any disclosure.

In apparent recognition of the traditional sanctity of conversations between attorney and client and the requirements of regulations, the New Hampshire Department of Corrections has a policy and procedure direction regarding inmates' use of telephones, and attempts to exempt attorney-client calls from its general monitoring procedure. Ex. No. 2, at ¶ IV.H.

### B. Use of Intercepted Attorney-Client Calls, And Their Fruit, Would Violate Glenn's Sixth Amendment Right to Counsel

The Sixth Amendment is meant to assure fairness in the adversary criminal process. United States v. Cronic, 466 U.S. 648, 656 (1984). The attorney-client privilege "is key to the constitutional guarantees of the right to effective assistance of counsel and a fair trial." United States v. Neill, 952 F. Supp. 834, 839 (D. D.C. 1997) (citing Coplon v. United States, 191 F.2d 749, 757 (D.C. Cir. 1951). "It is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him."

4

Coplon, 191 F.2d at 757. "The sanctity of the constitutional right of an accused privately to consult with counsel is generally recognized and zealously enforced by state as well as federal courts." Id. at 758. This is because

> [t]he right of an accused, confined in jail or other place of detention pending a trial of the charge against him, to have an opportunity to consult freely with his counsel without any third person, whose presence is objectionable to the accused, being present to hear what passes between the accused and his counsel, is one of the fundamental rights guaranteed by the American criminal law- a right that no Legislature or court can ignore or violate.

Id. (quoting Ex parte Rider, 195 P. 965, 965 (Cal. App. 1920)). Indeed, because the ability to freely communicate with counsel is so essential to effective representation of the accused, a defendant's right to consult privately with counsel is "a fundamental right which cannot be abridged, interfered with, or impinged upon in any manner." Id. at 759.

In the First Circuit, once the defendant has put forward a prima facie case establishing that the Government's actions have led to an intrusion into the attorney-client relationship, the burden shifts to the Government to show that there has been and there will be no prejudice to the defendants as a result of these communications. "The burden on the government is high because to require anything less would be to condone intrusions into a defendant's protected attorney-client communications." United States v. Mastroiani, 749 F.2d 900, 908 (1st Cir. 1984).

In Mastroianni, the prima facie showing was made by demonstrating "that confidential communications were conveyed as a result of the presence of a government informant at a defense meeting." Id. at 907-908. Here, Mr. Glenn has established that his Sixth Amendment right to counsel was violated in this case by the interception of confidential telephone calls between him and his attorney, and the disclosure of the content of those phone calls to the prosecution team, without a warrant and without consent. The burden is thus on the Government to show that there has been no prejudice to the

defendant. Mr. Glenn maintains that the Government cannot meet its burden.

As a result, this Court should exclude the content of the attorney-client calls and any fruits (i.e. any incriminating statement, any particular piece of evidence, or the result of a decision (like to indict Glenn) that the government cannot prove was based entirely on a source independent of the attorney-client eavesdropping).

### C. Use of Intercepted Attorney-Client Calls, And Their Fruit, Would Violate Glenn's Fifth Amendment Due Process Rights

In the criminal law context, the Due Process Clause of the Fifth Amendment seeks to ensure fairness at each stage of the criminal process from investigation and arrest to indictment and trial to sentencing and appeal. Spencer v. Texas, 385 U.S. 554 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.") (citations omitted). The inquiry under the Due Process Clause is essentially a question of what process is due. Reid v. Covert, 354 U.S. 1, 75 (1957) (Harlan, J. concurring). In Rochin v. California, 342 U.S. 165 (1952), for instance, the Court based its decision on the due process clause when it found that the forced stomach pumping of a suspected narcotics offender was a resort to physical brutality and an invasion of bodily integrity which could not be tolerated under civilized norms of decency, fairness and justice. Id. at 174. That holding foreshadowed the Court's definition of the related doctrine of "outrageous government conduct which shocks the conscience" decades later in United States v. Russell, 411 U.S. 423, 431-32 (1973) which indicates that government's actions "may be of so shocking a nature as to violate a defendant's right to due process." United States v. Panitz, 907 F.2d 1267, 1272 (1st Cir. 1990). The Fifth Amendment's guarantee of due process protects against the interception of privileged attorney-client telephone calls by the Government. See Coplon, 191 F.2d at 759.

In cases involving government intrusion into the attorney-client relationship, a defendant is entitled to suppression if he can show, (1) governmental knowledge of the attorney-client relationship; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice.  See United States v. SDI Future Health, 464 F.Supp.2d 1027, 1049 (D. Nev. 2006) (citing United States v. Segal, 313 F. Supp. 2d 774, 8780, n.8 (N.D. Ill. 2004)) see also, United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996) (applying test in the context of defense attorney voluntarily turning privileged information over to prosecution); United States v. Kennedy, 225 F.3d 1187, 1195 (10th Cir. 2000).

Here, all three elements are met for a Fifth Amendment violation. The Government or its agents could not have mistaken Glenn's conversations with Atty. M. for anything other than an attorney-client communication, as they discussed a legal matter and Glenn had identified Atty. M. as his counsel and noted Atty. M. was registered as a licensed New Hampshire attorney. (Ex No. 1).  The government agents deliberately intruded on the relationship by listening to the calls and disseminating those recording to prosecutors.  If the evidence of the calls is admitted at trial as supposed Rule 404(b) evidence, the prejudice will become actual and substantial.

### D. Use of Intercepted Attorney-Client Calls, And Their Fruit, Would Violate Glenn's Fourth Amendment Right to Unreasonable Searches and Seizures

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The protection afforded by the Fourth Amendment against unreasonable searches and seizures "governs not only the seizure of tangible items, but extends as well to the recording of oral statements." Katz v. United States, 389 U.S. 347,

353 (1967). The applicability of the Fourth Amendment depends on two things: "first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" Id. at 361 (Harlan, J., concurring). If those prerequisites are met, then the court must determine whether the search or seizure at issue was reasonable. In the context of electronic surveillance, a search and seizure is presumed to be unreasonable unless authorized in advance by a warrant. See Katz, 389 U.S. at 359.

Here there was no warrant, and the seizure of Glenn's communications were not reasonable under the Fourth Amendment. Furthermore, Glenn had a reasonable expectation of privacy in the telephone calls with Atty. M. As noted above, attorney-client communications have a special status in our legal system. Swidler & Berlin, 524 U.S. at 403. The existence of robust protections for attorney-client communications make the expectation of privacy in conversations with attorneys and detainees reasonable. Lonegan v. Hasty, 436 F. Supp. 2d 419, 435 (E.D.N.Y. 2006).

Defendant had a legitimate privacy interest in his attorney-client calls, even though he was in prison when the calls were made. Privileged communications between attorneys and clients, the recording of which is prohibited both by statute and regulation, are protected by the Fourth Amendment from government eavesdropping, especially when those communications take place in the area of the prison designated for attorney-client meetings. Cf. Lanza v. State of New York, 370 U.S. 139, 143-44, (1962) ("[I]t may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection."); Al Odah v. United States, 346 F. Supp. 2d 1, 8-15 (D.D.C. 2004) (denying the government's application to conduct real time monitoring of meetings between attorneys and post-September 11th detainees held at Guantanamo Bay Naval Base because such

monitoring would "impermissibly burden the attorney-client relationship and abrogate the attendant attorney-client privilege."). Similarly, prisons provide the sole means where and by which an inmate may make a phone call to his attorney.

Defendant concedes that "[a] telephone call can be monitored and recorded without violating the Fourth Amendment so long as one participant in the call consents to the monitoring." United States v. Novak, 531 F.3d 99, 101 (1st Cir. 2008) (citing United States v. White, 401 U.S. 745, 752 (1971) (plurality opinion). However, in this instance neither party consented to the monitoring. See Affidavit of Defendant.

As such, the recorded attorney-client calls must be suppressed as the seizure and use of the calls violates the Fourth Amendment.

### E. Congress Has Recognized The Special Threats That Electronic Surveillance Poses To Confidential Attorney-Client Communications

In enacting and amending Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§2510-2522, Congress was mindful of the threat that government electronic surveillance posed to individual privacy and confidential communications. In the statute, Congress established special procedures and criteria to obtain judicial orders to intercept and use electronic communications for criminal investigations and prosecutions. For example, such orders may be made only after a judge makes certain findings, id. §2518(3), must be limited to no more than 30 days (unless extended for another 30 days), id. §2518(5), and may require periodic reports to the court. Id. §2518(6). The judge authorizing an interception must give notice not only to the target of the interception, but also "other parties to the intercepted communications." Id. §2518(8)(d).

Significantly, Congress was careful to require the government to "minimize the interception of communications not otherwise subject to interception." 18 U.S.C. §2518(5);

9

see United States v. Hoffman, 832 F.2d 1299, 1307 (1ˢᵗ Cir. 1989) ("This minimization requirement spotlights the interest in confining intrusions as narrowly as possible so as not to trench impermissibly upon the personal lives and privacy of wiretap targets and those who, often innocently, come into contact with such suspects."). Moreover, privileged communications, whether intercepted in accordance with or in violation of the statute, retain their privileged character. §2517(4).

Along with these procedural and substantive rights, the statute gives courts wide authority to remedy and rectify harm from improper interception. A judge may seal the intercepted communications, §2518(8)(a), make the intercepted communications available to the party and his counsel, §2518(8)(d), (10)(a), make the applications and resulting judicial orders available to the party and his counsel, §2518(8)(d), (9), and order "preliminary and other equitable or declaratory relief as may be appropriate." §2520(b)(1). It also allows an aggrieved person[2] to move to suppress calls (and their fruits) that were unlawfully intercepted or intercepted in violation of the order. §2518(10)(a).

### F. The Government's Use of Intercepted Attorney-Client Calls, And Their Fruit, Would Violate The United States Code

Congress wrote Title III to conform to the constitutional standards governing wiretapping prescribed by the Supreme Court in Berger v. New York, 388 U.S. 41 (1967) and Katz. See S.Rep. No. 90-1097, at 66 (19686), reprinted in 1968 U.S.C.C.A.N. 2112, 2153.

In the present case, the Government obtained copies of telephone calls made by Glenn to his attorney from the New Hampshire State Prison for Men. The Government was under a statutory obligation not to intercept privileged communications. See 18 U.S.C.

§2518(5) (requiring minimization); §2517(4) (privileged communications do not lose their privileged character as a result of being intercepted); Hoffman, 832 F.2d at 1307 (explaining the purpose of minimization).

The statutory remedy for intercepting attorney-client communications is to prevent the government from using the communications, and the fruits derived from those communications, in any litigation. See 18 U.S.C. §2518(10)(a) (suppressing government use of the intercepted communications); §2520(b)(1) (permitting equitable relief). It makes no difference whether the government inadvertently, negligently or intentionally intercepted privileged calls. See United States v. Charles, 213 F.3d 10, 23 (1st Cir. 2000) (upholding suppression of a single attorney-client privileged communication that was inadvertently intercepted). This remedy is designed to protect the victims of government wiretap violations, not to punish the government. For these reasons, the Court should order the Government not to use intercepted attorney-client communications or their fruits that the government cannot prove was based entirely on a source independent of the attorney-client eavesdropping. The recorded attorney-client calls between Glenn and Atty. M. seem to be the basis for all the alleged Rule 404(b) evidence against Glenn in Count One, and should be excluded.

II.  **The Government Has The Burden Of Showing That All The Rule 404(b) Evidence Was Derived From Sources Independent Of The Attorney-Client Eavesdropping**

In determining how to handle derivative evidence from government intrusion into the attorney-client relationship, the First Circuit adopted a burden-shifting analysis in Mastroianni, 749 F.2d at 908. See also Kastigar v. United States, 406 U.S. 441 (1972).

---

[2] The statute defines an "aggrieved person" as one who was a party to the intercepted communication or against whom the interception was directed. 18 U.S.C. §2510(11). Glenn is an aggrieved person under the statute.

Once the defense makes a prima facie showing of prejudice, as it has here, the burden then shifts to the government to show that it did not use this information.

The defense has made a prima facie showing of prejudice, as he has shown that the government acted affirmatively to intrude into the attorney-client relationship and thereby obtain privileged information.

The fruits of the illegal search of seizure must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 484 (1963). Because "searches that result in no weapons or contraband being found do not – as practical matter – make it to the courthouse door," the social cost of suppression must be borne in order to "purchase a measure of privacy." United States v. McKoy, 402 F. Supp. 2d 311, 314 (D. Mass. 2004, aff'd, 428 F. 3d 38 (1st Cir. 2005). A search or seizure cannot be justified by the evidence discovered as a result of that intrusion. See DeVasto v. Fagerty, 658 F. 2d 859, 863 (1st Cir. 1981) ("[T]he premise that the fruits of a search cannot be the basis for determining whether fourth amendment requirements were met is firmly established."); see also United States v. Di Re, 332 U.S. 581, 595 (1948) ("[A] search is not to be made legal by what is turns up.").

## CONCLUSION

For the foregoing reasons, the Court grant Glenn's motion to exclude all evidence of the intercepted attorney-client calls, and their fruits, including the entirety of any Rule 404(b) evidence.

Respectfully submitted,
CHARLES GLENN

/s/ MARK W. SHEA                                         Dated:  August 30, 2024
Mark W. Shea
Shea and LaRocque, LLP
88 Broad Street, Suite 101
Boston MA  02110
telephone:  617.577.8722
e-mail:  markwshea@shearock.com

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 30, 2024.

/s/ Mark W. Shea
MARK W. SHEA