UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) No. 1:23-cr-00112-PB-AJ |
| CHARLES GLENN | ) |
| Defendant | ) |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS (DN 21)**

Defendant's Motion to Suppress (DN 21) raises two primary issues: (1) whether a threatening telephone call to an attorney is privileged; and (2) whether Defendant's constitutional rights were violated when the threatening call was recorded on December 1, 2020. The clear answer to both questions is no. Defendant's motion should be denied without a hearing.

**FACTUAL BACKGROUND**

In 2020, Defendant was incarcerated in the New Hampshire Department of Corrections ("DOC"). Pursuant to DOC policies, inmates have access to a telephone system. Inmates are required to submit attorney telephone numbers through an inmate request slip to ensure privileged attorney-client calls are not recorded. Gov't Ex. 1 ¶4[1]. On August 17, 2020, Defendant submitted an inmate request to the vendor asking that telephone number (603) 722-4956 ("the (603) number") be added to his privileged call list. Defendant identified his attorney as Attorney M. Gov't Ex. 3, page 1. The vendor added this number as a private number. However, Attorney M was unfamiliar with telephone number the (603) number and has never used this number. Gov't Ex. 2, ¶3.

---

[1] Government Exhibits 1 and 2 are affidavits submitted in connection with a state civil lawsuit filed by Defendant against the New Hampshire Department of Corrections, Attorney M, and others.

On October 5, 2020, Defendant submitted a request to clear his call list. Gov't Ex. 3, page 2. In November 2020, Defendant submitted numerous other requests to either clear his call list or add other privileged numbers for legal counsel. Gov't Ex. 3. Defendant never added Attorney M back to his call list and never submitted any phone numbers for her other than the (603) number.

On December 1, 2020, Defendant called Attorney M over telephone number (617) 335-XXXX ("the (617) number"). Gov't Ex. 1 ¶5; Gov't Ex. 2 ¶8. At no time prior to this call had Defendant requested that the (617) number be added as an attorney number. Gov't Ex. 1 ¶6. Therefore, the call was recorded pursuant to the DOC policy. Gov't Ex. 1 ¶6. At the outset of this call, Defendant received an audible warning that the call was subject to monitoring and recording. Gov't Ex. 1 ¶¶ 8, 10. Defendant proceeded with the call to Attorney M. *Id.* During this call, Defendant threatened to kill one of Attorney M's children. Gov't Ex. 1 ¶8.

Law enforcement learned of this call after Attorney M reported the threat to DOC. Gov't Ex. 1 ¶5. Following the report, the FBI obtained a copy of the December 1 call from DOC.

Defendant now argues that the call itself is privileged and the recording was made in violation of his Sixth, Fifth, and Fourth Amendment rights. He also claims that the recording was made in violation of the federal wiretap statute. His arguments are without merit.

## DISCUSSION

### A. Threatening Communications Are Not Privileged

As a threshold matter, the call Defendant seeks to suppress is not privileged. Threats of violence are not statements that fall under the scope of the attorney-client privilege. The Supreme Court has held that "[a] defendant who informed his counsel that he was arranging to bribe or threaten witnesses or members of the jury would have no 'right' to insist on counsel's  .

2

. . silence." *Nix v. Whiteside*, 475 U.S. 157, 174 (1986). The United States District Court for the District of Massachusetts followed *Nix* in a threat context. *United States v. Sampson*, No. 01-10384-LTS, 2017 U.S. Dist. LEXIS 129686, at *30-31 (D. Mass. Aug. 15, 2017) ("The right to counsel does not include a right to a lawyer who will stand silent in the face of credible threats of violent criminal conduct by his client, risking the lawyer's own safety and the safety of others, and exposing the lawyer to disciplinary proceedings and sanctions for disregarding his professional and ethical obligations.").

Other courts have similarly concluded that threats are not privileged. *See, e.g., United States v. Ivers*, 967 F.3d 709 (8th Cir. 2020) ("Threats of violence are not statements that fall under the scope of the attorney-client privilege."); *United States v. Alexander*, 287 F.3d 811, 816 (9th Cir. 2002) (defendant's "threats to commit violent acts against [defense attorney] and others" were clearly not privileged); *United States v. Stafford*, No. 17-20037, 2017 WL 1954410, at *3 (E.D. Mich., May 11, 2017) (defendant's statements to his attorney threatening a judge were not protected by attorney-client privilege); *United States v. Jason*, No. 09-cr-87-LRR, 2010 WL 1064471, at *3 (N.D. Iowa, Mar. 18, 2010) (defendant's threatening letter to his attorney was not privileged); *United States v. Lentz*, 419 F. Supp. 2d 820, 829 (E.D. Va. 2005) (communications made for an unlawful purpose are not privileged); *United States v. Sabri*, 973 F. Supp. 134, 140--41 (W.D.N.Y. 1996) (defendant's statements to his attorney threatening to kill a federal immigration judge were not protected by the attorney-client privilege); *United States v. Thomson*, No. 94-0083, 1995 WL 107300, at *1 (D. Or. Mar. 13, 1995) (defendant's threats against a judge and his family were not privileged even though they were communicated to his attorney).

### B. The Call Was Recorded Due to Defendant's Own Conduct

Defendant can hardly complain that DOC recorded his threatening call to Attorney M when he failed to comply with established procedures to prevent the recording of attorney-client communications. In December 2020, DOC had an established written policy to monitor and record calls made by inmates from the housing units. The facility did not have an across-the-board recording policy. As described above, an inmate could exclude calls with his/her attorney from recording by complying with DOC's procedures. The burden is on the inmate to comply. On multiple occasions prior to December 1, Defendant requested that attorney numbers be added to his call list and thus exempt from recording. He clearly was on notice of the policy.

Defendant argues that he "specifically requested that Atty M.'s number be registered as his attorney's." Defendant's Motion at 3; Defendant's Exhibit 1. The Government does not dispute that Defendant submitted the (603) number on August 17, 2020. However, that number was not Attorney M's number. Even if it were, Defendant made the threatening call over the (617) number – which he never submitted to DOC. Defendant does not, and cannot, argue that he requested that the (617) number be on his privileged list. The call was recorded due solely to Defendant's conduct and not through deliberate government intrusion into his confidential communications.[2] This fact is fatal to his claims.

### C. There is No Sixth Amendment Violation

"A Sixth Amendment violation cannot be established without a showing that there is a 'realistic possibility of injury' to defendants or 'benefit to the State' as a result of the

---

[2] On September 2, 2020, Defendant filed a pro se pleading in a civil matter in this Court (Docket No. 1:16-cv-06-SE) (Gov't Ex. 4 at 3). In this pleading, Defendant alleged that he had "recorded phone calls, text messages, e-mails, etc." that would prove Attorney M lied. Defendant would not have these recorded phone calls had he properly recorded Attorney M's phone number with the DOC. Not only does this further establish Defendant's knowledge of the recording procedures, but also suggests Defendant's decision to record the (603) number and not Attorney M's actual number was intentional.

government's intrusion into the attorney-client relationship." *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir. 1984) (*quoting Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)). *Mastroianni* involved the presence of a confidential informant at a defense meeting. The First Circuit stated that "in order to make a prima facie showing of prejudice the defendant must prove that confidential communications were conveyed as a result of the presence of a government informant at a defense meeting. *Id.* at 907-08. "Upon such proof, the burden shifts to the government to show that there has been and there will be no prejudice to the defendants as a result of these communications." *Id.* at 908.

In this case, Defendant cannot show that confidential communications were conveyed as a result of government conduct. Moreover, the government can readily establish that there is no prejudice to Defendant.

1. *Defendant Has Not Made a Prima Facie Showing of Prejudice*

Defendant asserts that his Sixth Amendment rights were violated because of the "interception" of calls with Attorney M and the disclosure of these calls without a warrant. This argument is wrong. First, only the December 1 call is at issue here. The Government has no intent to offer any other calls between Attorney M and Defendant that may have been recorded by DOC. Second, the December 1 call is not a privileged confidential communication. The call is an illegal threat. Because it is not confidential due to its illegal nature, Defendant cannot claim that confidential communications were pierced as a result of government conduct. As a result, he does not make his prima facie showing of prejudice. The argument ends here.

*2. No Prejudice in Fact Exists Here*

Even if Defendant could meet the *Mastroianni* prima facie showing, it is clear that no prejudice exists. "[I]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference 'substantially prejudices' the defendant." *Williams v. Woodford*, 306 F.3d 665, 683 (9th Cir. 2002).

There was no purposeful intrusion into the defense camp. The Government did not obtain any information about defense strategy. Instead, the Government obtained a recording, the contents of which contain an illegal act, only after becoming aware of threat. DOC's production of this call to federal investigators does not implicate any protected communications. There was not a Sixth Amendment violation on these facts.

In summary, DOC did not interfere with Defendant's Sixth Amendment right to counsel. DOC had a well-established procedure to protect confidential communications. Defendant clearly knew how to follow this procedure. Defendant chose to submit a (603) number for Attorney M and subsequently cleared his call list. He threatened her over the (617) number. The further dissemination of the call does not violate his Sixth Amendment rights because, as noted above, the threatening call is not privileged.

**D. There is No Fifth Amendment Violation**

Defendant's alleged Fifth Amendment due process violation fares no better than his other arguments. Law enforcement conduct encroaches on a defendant's due process rights if it violates "fundamental fairness" and "shock[s] . . . the universal sense of justice." *United States v. Anzalone*, 923 F.3d 1, 5 (1st Cir. 2019) (*quoting United States v. Russell*, 411 U.S. 423, 432,

(1973)). The exclusion of otherwise relevant evidence under this doctrine is limited to the "most extreme of cases." *United States v. Byram*, 145 F.3d 405, 408 (1st Cir. 1998).[3]

As noted above, the Government obtained a non-privileged threatening call that was recorded solely because of Defendant's own actions. Nothing in this record remotely supports a conclusion that the Government violated Defendant's due process rights.

### E. There is No Fourth Amendment Violation

"[T]he proponent of a motion to suppress must establish not only the unlawfulness of the challenged Governmental action, but that it intruded upon some legitimate expectation of privacy of the proponent." *United States v. Soule*, 908 F.2d 1032, 1034 (1st Cir. 1990), *see also Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980); *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978). Defendant has failed to establish that he has a legitimate objective or subjective reasonable expectation of privacy in the December 1 call.

"Courts have generally concluded that neither an inmate (including a pretrial detainee) nor a person who knowingly receives a call from the inmate has a reasonable expectation of privacy in telephone calls between them[.]" *United States v. Novak*, 453 F. Supp.2d 249, 257 (D. Mass. 2006), *rev'd on other grounds*, 531 F.3d 99 (1st Cir. 2008). "When a jail plays a recording at the beginning of a call warning the inmate and other parties of the potential for monitoring and recording, the inmate and other parties impliedly consent to monitoring and recording by continuing the call." *United States v. Ware*, No. CR 122-019, 2023 U.S. Dist. LEXIS 65344 (S.D. Ga. Mar. 3, 2023), at *23-24 (collecting cases); *United States v. Magee*, No. 2:13-cr-176-GZS, 2014 U.S. Dist. LEXIS 126246 (D. Me. Sept. 8, 2014), at *33.

---

[3] Even when applying the out of circuit three-part test advanced in Defendant's Motion, the argument fails. There was no deliberate intrusion into the attorney-client relationship. The call was recovered after Attorney M. reported the threat. Furthermore, Defendant cannot show actual and substantial prejudice from the government obtaining a non-privileged threatening communication.

7

The consent analysis is unchanged if the call is with an attorney. *See Novak*, 531 F.3d at 103 ("Because Holyoke consented to monitoring of his calls, those calls--including those made between Holyoke and his attorney--can be introduced into evidence consistently with the requirements of the Fourth Amendment."). As the court reasoned in *United States v. Hatcher*, 323 F.3d 666 (8th Cir. 2003), the "presence of the prison recording device destroy[s] the attorney-client privilege" because "the inmates and their lawyers" cannot "reasonably expect that their conversations would remain private." The recording device is "the functional equivalent of the presence of a third party." *Id.*; *cf. United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002) (no reasonable expectation of privacy where an inmate was on notice that his calls were recorded); *United States v. Lentz*, 419 F. Supp. 2d 820, 828-829 (E.D. Va. 2005).

Here, DOC provided Defendant with a clear avenue to avoid the recording of attorney calls. He failed to provide DOC with Attorney M's actual phone number. At the outset of the December 1 call, he received a warning about recording. He elected to proceed with the call. There is no Fourth Amendment violation.

### F. There is No Title III Violation

Defendant's last attempt at suppression is a claim that the Government violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510- 2522 ("Title III"). "Title III prohibits the interception of telephone conversations, subject to certain exceptions, without a court order." *United States v. Lewis*, 406 F.3d 11, 14 (1st Cir. 2005). Wire or oral communications intercepted in violation of Title III are inadmissible as evidence in court. *Id.* An "aggrieved person," defined as "a person who was a part to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed," 18 U.S.C. §

8

2510(11), may move to suppress the contents of any unlawfully intercepted communication. *See* 18 U.S.C. § 2518(10)(a).

Defendant's challenge under Title III fails because two exceptions to Title III apply in this context. The first is the "law enforcement" exception. Under this exception, oral communications may be intercepted by investigative and law enforcement officers acting in the ordinary course of their duties. See 18 U.S.C. § 2510(5)(a) (excluding from the definition of "electronic, mechanical, or other device" "any telephone or telegraph instrument, equipment or facility, or any component thereof ... being used by ... an investigative or law enforcement officer in the ordinary course of his duties.")

In *Lewis*, 406 F.3d at 16, the First Circuit found that the acquisition of the contents of a communication by an investigative or law enforcement officer in the ordinary course of his duties is not an interception for Title III purposes. The Court held that that a recording made pursuant to a routine prison practice of monitoring all outgoing inmate calls under a documented policy does not constitute an interception for Title III purposes. *Id.* at 18.

In this case, these recordings were obtained by jail investigators in the ordinary course of their duties in implementing the jail's written policy relating to inmate calls. Under these circumstances, there is no Title III violation.

Defendant also consented to the recording. A party's consent to interception is another exception to Title III's general prohibition. Title 18, United States Code, Section 2511(2)(c) provides that, "It shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception." Only one party to a telephone call need consent to the call's interception. *See United States v. Footman*, 215 F.3d 145, 154 (1st Cir. 2000). "The First

Circuit has held that a prison inmate's 'express acceptance' of having his calls recorded as a condition for using the telephone is 'consent' sufficient for purposes of §2511(2)(c)." *United States v. Roy*, 349 F. Supp. 2d 60, 62 (D. Mass. 2003) (*citing Footman*, 215 F.3d at 155); *see also United States v. Conley*, 531 F.3d 56 (1st Cir. 2008) (interception did not violate Wiretap Act where inmate consented to the monitoring of his calls).

"It is generally accepted that a prisoner who places a call from an institutional phone with knowledge that the call is subject to being recorded has impliedly consented to the recording." *United States v. Faulkner*, 439 F.3d 1221, 1224 (10th Cir. 2006) (*citing, inter alia, Footman*, 215 F.3d at 154). The facts of this case demonstrate that Defendant consented to the interception of the December 1 call. At the outset, Defendant was advised the call was monitored and recorded. He elected to proceed with the call.

### G. Rule 404(b) Has No Application Here

The December 1 threatening call is direct evidence of the offense charged and not Rule 404(b) evidence. To the extent Defendant seeks to exclude other calls with Attorney M, the Government gives notice that it does not intend to offer any other calls with Attorney M in its case-in-chief.[4]

### H. No Evidentiary Hearing is Necessary

Defendant requests an evidentiary hearing on his motion. The government objects. "A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress." *United States v. Pittman*, No. 22-cr-129-LM, 2024 U.S. Dist. LEXIS 117907 (D. NH July 3, 2024), at *11 (*quoting United States v. Cintron*, 724 F.3d 32, 36-37 (1st Cir. 2013)). "Evidentiary hearings on motions are the exception, not the rule." *United States v. McGill*, 11

---

[4] The Government does expect to offer some of Defendant's written correspondence with Attorney M. These materials were the subject of litigation before the Magistrate Judge in response to a grand jury subpoena.

F.3d 223, 225 (1st Cir. 1993). "[A] party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment." *Id.* "The substantive test to be applied when a criminal defendant seeks an evidentiary hearing is whether the movant has made an adequate threshold showing that the material facts are in genuine doubt or dispute." *United States v. Rodriguez*, 162 F.3d 135, 148 (1st Cir. 1998). "That undisputed facts may plausibly be interpreted in different ways does not entitle an interested litigant to an evidentiary hearing." *McGill*, 11 F.3d at 226.

Defendant cannot show that he ever added the (617) number to his privileged call list. The call was thus recorded pursuant to DOC policy. The call is also non-privileged as a matter of law. The motion should be denied on the papers.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress should be denied.

Date: October 1, 2024

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney
District of Maine

By: */s/David B. Joyce*
David B. Joyce
Special Attorney to the United States Attorney General
Acting Under Authority Conferred by 28 U.S.C. § 515

United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, ME 04101
David.Joyce@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on October 1, 2024, I filed the above Response using the Court's CM/ECF system, which will cause a copy to be sent to all counsel of record.

       DARCIE N. MCELWEE
       United States Attorney
       District of Maine

By:    */s/David B. Joyce*
       David B. Joyce
       Special Attorney to the United States Attorney General
       Acting Under Authority Conferred by 28 U.S.C. § 515

       United States Attorney's Office
       100 Middle Street, East Tower, 6th Floor
       Portland, ME 04101
       David.Joyce@usdoj.gov