**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6-16-2026

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA

v.

CHARLES GLENN

* * * * * * * * * * * * * * * * * * * *

23-cr-112-01-PB
January 7, 2026
3:05 p.m.

TRANSCRIPT OF CONFERENCE HELD VIA ZOOM
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

For the Government: Sean Green, AUSA
U.S. Attorney's Office
Portland, Maine

For the Defendant: Daniel Joseph Cloherty, Esq.
Cloherty & Steinberg, LLP

Court Reporter: Susan M. Bateman, RPR, CRR
Official Court Reporter
United States District Court
55 Pleasant Street
Concord, NH 03301
(603) 225-1453

P R O C E E D I N G S

THE CLERK: Good afternoon, your Honor.

We're here for a status conference in United States of America versus Charles Glenn, 23-cr-112-01-PB.

THE COURT: All right.

Mr. Cloherty, what are your plans with respect to the upcoming trial?

MR. CLOHERTY: Good afternoon, your Honor, and Happy New Year.

I have been -- first of all, obviously we're in receipt of the Court's order relating to an additional expert, and we're trying to move on that right away.

I've been conferring with Mr. Green about the upcoming trial date. It was my hope that in advance of today I would have an assented to motion to continue. I don't quite have that, which is not to say that Mr. Green and I have not been collaborating on this front, and I'll let him address the government's position, but I thought I would have -- I also didn't quite have the benefit of the Court's schedule.

But here's what I would propose to do, assuming it works for the Court, which is that I would be filing promptly a motion to continue the trial. And after conferring with Mr. Green and conferring with -- who has conferred with witnesses about their availability, I've also conferred, and we both have some competing trial calendar issues, we've identified

two weeks that would work for counsel.

The first and the earliest one would be the week of February 9th, which would be a few weeks continuance. Again, I don't know what availability the Court has. I think the Court is aware that we're probably looking at an approximately two-day trial. So I don't even know if we would consume a whole week, but we would need a couple days.

And then the second --

THE COURT: Let me just say, Mr. Cloherty, I have no higher priority in my life than resolving this case. So I will do whatever is necessary. I've been ready to try this case since the case was assigned to me and I've been ready to compel the government to try the case since that time, and I have no higher priority than resolving this case. So whatever is needed from me, I will provide.

Now, my case manager reminds me that there are certain days of the month that we are noticing jurors that they need to come in for potential jury draws. We have to in most cases -- here there would be a jury draw on the 3rd and the 18th in February. So February 3rd and February 18th. We wouldn't necessarily have to start the trial on those days. Usually I will go up to two weeks from the jury draw day to the start of the trial, if necessary. So I can accord you tremendous flexibility about that.

It's a very unusual case where I would go to the

tremendous inconvenience for jurors and court personnel of trying to summon jurors in here on days other than scheduled jury draws, but I'm open to anything to resolve this case that I can possibly do.

So I'm going to try to stick to the jury draw days in terms of scheduling the trial. So don't worry about that for the time being. If you and the government -- first of all, I want to be clear. I would not continue this case again, and I would not continue this case for any reason on the government's motion. The only way I'll continue a case is if the defendant wants a continuance and there are good reasons to grant that continuance. But if you want a continuance and need a continuance -- and let me just clarify something with you first.

I believe you filed your most recent motion ex parte, but the details -- that only addresses the details. I think you referenced in open court the fact that your client might be seeking some possible -- an evaluation as to whether some additional medication might be helpful to him.

And I think I referenced the fact that based on my familiarity with many of those medications, they don't achieve full effectiveness the first day they're taken. They have to be taken for a couple of weeks before they start to have the effects that people anticipate from them.

So it seems to me that although I have found your

client is competent and I am ready to try the case as scheduled and I have approved your request to have a psychiatrist conduct an evaluation as to whether additional medications would be helpful, that's being done at your request, not because it's necessary for him to be competent, but because it might aid him in helping you -- being able to help you to the maximum possible extent at trial.

So it's for his benefit at his request solely to serve purposes that you and he are trying to achieve that I would be granting this continuance. So I just want to be clear about that up front.

That being said, if you were to present me with a motion to continue that laid those things out and it made clear that your client was made aware of the fact that his rights under the Speedy Trial Act, his speedy trial rights and his IAD speedy hearing rights are all being waived to the extent necessary to accomplish the continuance, then I would be inclined to grant a limited -- I just really am not willing to extend this case further than that for any other reason that I can anticipate, but I'm willing to consider that for the specific reason that I want him to have the best shot at presenting whatever defense he wants to present. And anything that can help him get to the point where he can present that defense, I want to make sure he has that opportunity, but beyond that I want to get the case resolved.

So I guess the ball is in your court. Unless I get a motion from you that satisfies me that your client is seeking the continuance with an understanding of what that entails, I'm going to be planning to go ahead with the trial as scheduled.

So that's the option. I know that puts Mr. Green in a tough spot. He might have to have his witnesses on notice that, look, there's a possibility we might have to go in January, but more likely we're going to go in February.

I think until you get your motion in, that's about the best I can do because I can't -- I'm not going to delay the resolution of the case unless it's clear to me he wants me to to aid him in assisting you with respect to the defense.

MR. CLOHERTY: Fair enough, your Honor. I hear all that, and I appreciate the Court's desire to prioritize this matter. And so really based on that, I will represent to the Court I will be filing a motion. If I can get it in tonight, I'll get it in tonight. If not, I'll file it first thing in the morning.

I have -- in anticipation of it, I have talked to Mr. Green about it, and in terms of -- it sounds like -- and I have no objection to this. It sounds like I should be asking for February 9th.

The only other date because of our competing trial schedules in later February and then in March is at the end of

March, but I'm hearing from the Court you would rather have the February 9th date. I do think that is doable and gives us enough time to do what I want.

You're also correct, your Honor, notwithstanding the fact that I guess the substance of the motion was filed ex parte, I have shared with Mr. Green the contents, and I don't think there's any -- I think he has a general understanding of why we're seeking it.

So I will get that to you within 24 hours, and then we'll -- assuming the Court can -- and it sounds like maybe the 3rd, a jury picked on the 3rd and then sometime the week of the 9th for a trial would work, but then maybe I should stop talking and let Mr. Green speak.

THE COURT: Yeah.

Mr. Green, if you're concerned about your witnesses as to what days they're available in early February, I think we can accommodate you. We would draw the jury during the regular Tuesday jury period, and then we wouldn't start the case until the dates that you and Mr. Cloherty had agreed on where your witnesses can be present.

I would, you know, select the jury on that first date and then start with opening statements and evidence on the date that you and Mr. Cloherty agree to in February.

So with that in mind, do you have a -- are there dates in early February that you think work for you and the

witnesses you need to bring in?

MR. GREEN: Yes, your Honor, I do.

Let me just say, so I have spoken with Mr. Cloherty, as he represented, and we touched upon this issue at the last hearing, during the competency hearing, and my concern, of course, was with the witnesses. And in particular, I'm going to be candid, there's one witness who really matters, all the others are kind of ancillary for me, and that's the victim.

And so I relayed through her counsel, hey, in the event that there is a continuance, which I note the defendant intends to move for, what's your position and what is your availability.

As much as your Honor wants this case resolved, the victim wants this resolved, that was what was reported back to me, and she's opposed -- she wants the case to go as scheduled in January.

And it's my understanding that if it goes in January, it's a jury draw -- and I may be wrong about this, please feel free to correct me, of course, your Honor, but the jury draw would be January 21st and then I would hope that we would just go thereafter.

THE COURT: I can't remember when the -- maybe my case manager can refresh my memory.

What's the current trial dates?

THE CLERK: Yes. January 21st we were going. We're going to pick and go on the 21st.

THE COURT: January 21st.

So are you telling me that based on the victim's concerns, you're going to oppose Mr. Cloherty's motion to continue?

MR. GREEN: I would oppose it and ask that we keep the current date, pick on the 21st and go on I would assume the 22nd. I'll represent for the government that the government's case will take one day.

That said, I recognize -- I fully recognize --

THE COURT: You ought to allow two days in case Mr. Cloherty has more cross-examination, and always the defendant might choose to testify. So I think it's realistic to look at two days, two full trial days of openings, testimony, closings, but I understand your client -- believe me, I understand. As much as this case has been time-consuming and challenging and oftentimes unpleasant for me, I recognize that any concerns I have are minor in comparison to the defendant's concerns and the victim's concerns. These are important to both of them and we need to get it resolved for them as quickly as possible as well, but I have to do that consistent with the requirement that I give the defendant an opportunity to present his defense.

I do -- I think it is very unlikely -- unless that

psychiatric evaluation occurs immediately and unless we can get him on meds immediately, it's not clear to me that those medications will achieve their desired effect sufficiently in advance of the trial to -- and, you know, I guess we probably should -- I probably should pause here and also deal with the reality that at least as of the last hearing, it's unclear whether Mr. Glenn is going to appear in court. Any failure to appear will present its own set of issues that we will have to deal with.

Mr. Cloherty, I understand things are dynamic, that you don't have -- you know, you can only counsel with respect to Mr. Glenn, but at least the way things stand currently, do you anticipate that he's going to appear at trial?

MR. CLOHERTY: I do. I can only represent what I can represent, and I'm not going to deny the somewhat challenging history here.

What I can say is that he is on board with the proposed plan that was reflected in my ex parte motion, that he has indicated that he would be cooperative and agreeable to whatever medication regiment, if any, is recommended by the expert, and I am hopeful and I guess I just have to believe that he's going to come to court. I don't have -- he knows that that raised all sorts of problems, and I delivered to him the message from the Court that the Court directed me to deliver him about the risks that he's creating for himself

when he declines to appear.

So I don't know if I can say more than that, your Honor, but --

THE COURT: No, that's all I need, but if he's told you tell the judge I'm not coming to court, I need to know that because there are things that I would have to do that are going to be somewhat time-consuming to address that issue.

So, I mean, he's done it -- he has in the past declined to give notice of his intentions until the moment that it can have its biggest effect. And he may decline to do that again, I recognize that, and there's only so much I can do, but I'm going to plan for him that at least -- we're going to move ahead under the assumption that he is intending to come to court.

As an officer of the Court, if your client should tell you that that's not the case, I think you have an obligation to let me know so that I can plan for it. I don't think it is legitimate for a client to try to delay deliberately a decision not to appear in court for the purpose of creating maximum disruption of court proceedings, and so I expect to get notice if your client informs you of an intention not to come to court because then I have to start -- there are a variety of things that I have to do.

And if I bring 40 jurors into court with the expectation that he's going to come to court and those 40

people have to be turned away because of some issue that comes up, that's going to cause a tremendous disruption to the court proceedings, and it's unfair to those jurors to subject them to that.

So I need to know if he's not coming to court. You know, you can only do so much, I understand that, but to the extent you know he's not coming to court, I am telling you as an officer of the court, I think you have an obligation to make me aware of that when you learn that information whether it comes from your client and might otherwise be privileged or not. I don't think your client has a right to use you as an instrument to create disruption of court proceedings in an illegitimate way. So if you know he's not coming to court, you better tell me or you better satisfy yourself that you have some professional obligation that requires you to disobey a court order, because there's going to be problems if that happens.

And jurors have their lives disrupted because of this. It's one thing to disrupt the Court, the Marshal Service, the government lawyer, disrupt all of our plans, but it's another thing entirely to take ordinary citizens who are being compelled to come into court to try to accord your client his constitutional right to a fair trial and prevent that occurring and disrupting those people's lives. That is going to be a very problematic incident if it occurs with no

notice.

It's one thing if he tells me in advance, look, I'm not coming in, then I might have to do something like delay when the jury comes in, but to just wait till the day of jury draw, that's going to be a very difficult problem if that's what he decides to do.

MR. CLOHERTY: I certainly understand that, your Honor. All I can say, I hope the Court knows this, is that when this happened, I learned actually the morning as it was happening, I was notified by the Marshal Service.

But I guess to dovetail back to at least the matter at hand, I think it's all the more reason notwithstanding -- and I do understand Mr. Green's concern and the concerns expressed by one of his witnesses. All the more reason for the modest continuance that I will be filing for to get a potential medication regiment in place in the hope that that facilitates or helps us avoid such issues. I wish I could promise things.

And so, again, what I think I'm hearing from the Court, and I'm also sensitive to where the government is, I will be moving for, you know, a trial date I guess on the week of the 9th, whatever works for the government's witnesses, and then I agree with about two days and then a jury selection on the 3rd. I think that gives me just enough time, not a lot of time, just enough time to get Dr. Ramirez in there to

hopefully get him on some kind of regiment, enough to check, and then it's time to get going. I guess that's sort of my perspective.

THE COURT: All right. And, believe me, I understand completely and would never suggest that you had any advance notice that he wasn't going to be appearing.

I just wanted to make it clear on the record that with respect to the day of jury draw it's really important that he appear so we don't inconvenience jurors.

But, again, if you don't get notice, you can't give me notice. So I understand that.

All right. So, Mr. Green, here's the problem. I have -- I understand the victim's position and the objection that she has to any further delay of this already long-delayed case, but I believe that this is sufficiently important that I'm not able to deny a very short continuance for what seems to me to be a legitimate reason for the defense. So assuming --

And so, Mr. Cloherty, when you do file your motion, you can represent that the government objects to any continuance --

MR. CLOHERTY: Yes, your Honor.

THE COURT: -- for the reasons set forth by the government at the status conference on this date.

And I am prepared, over the government's objection,

to grant this last continuance.

If I do that, do you have a sense as to what days of the week -- we would draw the jury on the 3rd, and what days of the week on the, what did you say, 9th was the week that you would want to go? Would you be ready to go that Monday at 9 o'clock or do you have certain days of the week that are better for you or not?

MR. CLOHERTY: If you're asking me, your Honor, any day would be preferable. I would like to at least start I guess by Wednesday because I just don't want to be bumping into the weekend because I just feel that's difficult for jurors as well, but I will bow to whatever -- oh, actually -- I'm sorry. If you could hold one second. I recall that there was one potential -- oh, I do have a preference. If we could start -- my -- I have one other expert witness that I expect to call in the case whose availability is Thursday or Friday. So I guess I would ask to start on the 11th. If we started on Wednesday and the defense case could be at least on Thursday, then I think we would be done.

THE COURT: What is your preference during that week, Mr. Green? Do you have any --

MR. GREEN: So, your Honor, I'm going to yield to the preferences of the Court and the victim witness, but Wednesday would be fine with me, and it is not one of the dates that Ms. Melone's counsel has advised me she's

unavailable. If I hear otherwise --

THE COURT: You'll let me know.

MR. GREEN: I would notify the Court.

THE COURT: All right. Assuming I get an appropriate motion to continue that I'm prepared to grant, we will continue the case until February 3rd. We will draw the jury on February 3rd, and then we will plan to commence evidence on the Wednesday of the week of the 9th with the openings and the government's case on Wednesday morning and during Wednesday, and any defense case would be on Thursday, and hopefully we could wrap it up with closing arguments on Thursday. And if it did have to bleed over, we would still have Friday morning for closing arguments and jury charge.

All right. I have an outstanding motion to dismiss that I need to address. I will address that.

What other issues do the parties anticipate with respect to trial issues? Are there particular potential motions in limine? Are there unusual issues? Do the parties anticipate any substantial disagreement over jury instructions? Anything that either of you have that you want to take up with me regarding the trial?

Let's go with the government first here. Anything from your perspective that you need to take up with me?

MR. GREEN: Yes. I guess I'll just flag an issue. You had mentioned, your Honor, motions in limine.

As I mentioned, there's very limited evidence in this case. And I'll tell you what sort of the key piece of evidence, from the government's perspective, we intend to offer is the call, which was the subject of the motion to suppress. The motion to suppress was denied.

And then following that call Ms. Melone called 911 and was routed to the Medford police. I would like to introduce that, and, if necessary, will file a motion in limine.

I haven't had a chance to confer with Mr. Cloherty about this and what his view is, but my view would be that that phone call is an excited utterance that would be excepted from the hearsay rule. It was, my understanding, very shortly after the call that she called. It's very evident from listening to the recording, in my view, and it qualifies as an excited utterance.

If necessary, I would move in limine to have that deemed admissible or at least excepted from hearsay.

The only other really significant piece of evidence is the letter. Again, that's from the defendant. Just like the call is from the defendant, I just don't imagine -- I don't think I need any motions in limine with respect to those.

The only thing I'm envisioning, your Honor, is a motion in limine with respect to the 911 call, and there

may -- I admit I need to research this a little bit.

THE COURT: How much detail, if any, are you going into the circumstances of the defendant's criminal conviction that he's serving the sentence on and in which Ms. Melone was representing him on?

MR. GREEN: So that depends on what I find in the case law, your Honor, and how far I'm allowed to go. It's something I've been looking into myself, and the reason is this, your Honor. Ms. Melone clearly took this as a real threat and took it as a serious threat, and I think any reasonable person would do so given the context. And part of that context is that it came from someone in prison for a murder conviction, which matters. It's very different when a convicted murderer says he's going to have your children killed than if a Boy Scout says the exact same thing. It's very different, and I think that's material, but I recognize that that's clearly a prejudicial fact and it's going to have to be balanced. And I'm trying to look at case law, and I haven't reached what sort of the balance and limits are, but that is an issue where I would like to go as far as I possibly can because I think it is germane.

THE COURT: I assume there's no -- no one is in a position to dispute the fact that if the call comes in, it has to be understood that the defendant is in custody at the state prison. Nobody would be in a position to deny that. That

would be essential. Because given the way the alleged threat was made, it's just clear that it will have to come in that he is an inmate at the New Hampshire State Prison that engaged Ms. Melone, as his counsel, with respect to a litigation concerning his underlying conviction. All that would have to come in.

The only real question is does the nature of the charge -- and you're right, at least in my view, to say there is definitely a potential prejudicial effect. There's arguably a probative value. And I understand because of the way that the ultimate jury charge works out here what Ms. Melone understood the threat to mean could be important to the analysis and her totality of information might be relevant.

On the other hand, I run a very tight ship with respect to evidence of other bad acts by the defendant. So I think that definitely should -- unless Mr. Cloherty is prepared to concede that the actual nature of the charge should be admitted, I expect that to be a subject of a motion in limine and probably ought to be briefed by you both so that -- when I do make a ruling on it, I would want to have the benefit of briefing and I would want to make clear that no one should mention the nature of the conviction until and unless they obtain advance approval from me.

But I think that's an issue on which there's significant case law that exists, and I would like to know

your perspectives on it in writing. So you probably should put that one together as a motion in limine.

So I get your point, though. The call, the letter, the victim testimony about the background, that's primarily what your case is.

MR. GREEN: I would say that is primarily the case, and it's conceivable it could be exclusively my case, your Honor.

I will subpoena and have subpoenaed -- well, will subpoena other witnesses, but they are, quite frankly, ancillary compared to her.

THE COURT: All right. So we talked about that.

Have you started to delve into the potential jury instructions? I haven't looked at them yet. Do you anticipate any substantial disagreements regarding the instructions?

Mr. Green, do you have anything on that?

MR. GREEN: I have looked into them. The ones I looked at are the ones from the district of -- published by the District of Maine. I don't see anything being particularly controversial about them or complex about them.

There was one issue. And, your Honor, I believe this became a First Circuit opinion in a threat case that your Honor had handled -- and this might also be a motion in limine.

All this, by the way, your Honor, is just me flagging things that are going through my mind that I might raise on a motion in limine. I understand I should brief all of them.

THE COURT: Okay.

MR. GREEN: And that is provocation. I don't know, I have to talk to Mr. Cloherty about this, but I've seen in correspondence and in other civil litigation a position that Mr. Glenn has taken is that Ms. Melone somehow or another invited this because she encouraged him to be candid in his communications with her or to unburden him. If you're going to blow up, blow up at me, something to that effect, and I know that -- I want to make sure that, yeah, provocation is not a defense to a threat. And I believe there has been a case your Honor tried that had an instruction to that effect, and that was sustained by the First Circuit.

If that defense is raised, it's something that I would be objecting to or to that line of questioning or at least ask for a similar instruction.

THE COURT: Well, Mr. Cloherty has a right to keep his cards close to his vest, but to the extent he wants any ruling that involves any departure from what seems to be the obvious answer, it's generally better to give the Court advance notice. If you expect me to do anything unusual, the idea of waiting until the minute you intend to pounce is risky

because judges tend to be conservative and tend to not embrace novel theories that they have no time -- the judge has no time to think about. So as you consider your options, you might think about the tactical benefit of surprise versus the likelihood of convincing the judge to do something unusual. Because when you don't have time to reflect, you tend to say, well, this is how I've done it in the past. He's asking me to do something that I've never done before, and he has given me 30 seconds to make up my mind about it. Generally judges say, well, I'll default to what I have done over and over again and has worked well for me over many decades of work.

So you decide, but you don't have to say anything about that.

MR. CLOHERTY: I won't say much, but let me just state one thing. The law here is, I'll say, relatively clear in terms of the jury instruction issue, and I think characterizing it as a provocation defense I'm not sure I would agree with.

What does matter is what was reasonably heard and what was reasonably understood. I don't think -- I haven't really conferred with Mr. Green about that in terms of whether we can reach a hundred percent agreement on jury instructions or whether there's a decision for the Court buried in there. Whatever that decision is, it's still going to incorporate those notions. And the notions of the context in which the

comment was made and as it affects how the comment was reasonably understood is different, in my view, from a provocation defense.

So I'll confer with Mr. Green about it and we can talk about making sure that -- I'm not going to -- I appreciate the Court's counsel about not, you know, dropping something on the morning of trial and think I'm going to get what I want. I understand.

But I don't think it is any secret, as Mr. Green says, that the broader context in which the communications were made do matter, and I do think they're relevant here.

The Court anticipated my response, at least in part, to the in limine motion that was floated by Mr. Green, and we'll talk about that, too, and I'll give my view of -- it is -- I do agree with the Court, and I don't think there's going to be a dispute, the fact that he was incarcerated at the time of the communication actually I think bears also on the question of does it create reasonable fear, and there's no way to hide that fact. So I agree with that. It's the underlying reason for why he was incarcerated that we might have some disagreement and how that comes in.

THE COURT: I don't know how I'll rule on that, but I wouldn't be surprised if Mr. Green would try to press and that you would oppose it. I'll need to think that one through in the context of a threat case.

In a non-threat case it's a relative no-brainer for me, which is you don't get to put the murder conviction in.

MR. CLOHERTY: Right.

THE COURT: With respect to a threat case, Mr. Green's argument has at least superficial plausibility because, as you say, the issues are how would it be reasonably understood given the totality of the relevant circumstances, and someone who makes a threat who has never engaged in violent behavior might be perceived by somebody differently from someone who has been convicted of engaging in violent behavior.

Although, I have certain default rules. And when I do 403 balancing, I tend to exercise that balancing responsibility in a way that needs to see that there is a significant probative value to something that could be prejudicial. Of course I'll apply the calculus of Rule 403, but I'm just saying in general I am very cautious about evidence that has a prejudicial effect, and this clearly could have a prejudicial effect and I'll need to think that through carefully.

MR. CLOHERTY: The only other point since we're talking about it, and, again, sort of along the same lines as Mr. Green, my thinking on this is still in progress, but in terms of in limine motions from the defense, the letter does present some complicated privilege questions that -- I

recognize we have been up and down the mountain on the call and the Court has made its rulings on the call, but the letter I need to think about it. There may be some questions about the privileged nature of that communication to consider that I may have to raise with the Court in advance. Again, not something I would be springing on you on day one.

THE COURT: That definitely needs to be raised in advance. So think that through and file a pleading that gives Mr. Green an opportunity to respond to in advance of the trial.

I agree with you on the provocation issue. Frankly, Mr. Cloherty, I think you're the expert on what's in your client's best interest, but generally the jury reaction to she asked for it is not very good in cases that I've been involved with. And I would expect this issue to come up not so much in the context of she asked for it but more in the context of, look, this was an unusual relationship and you should understand this communication, as harsh as it is, in the context of that relationship, and when you do, you'll have a reasonable doubt about whether the government has been able to prove the elements of the charge as the judge will describe it to you.

To the extent I've been able to discern a defense and just sitting back and guessing, that seems to be what is likely to be raised. There may be other issues raised as

well. There have been references made at various times by various people in the case suggesting that there might be a claim by Mr. Glenn that Ms. Melone was tolerant of at the very least and maybe dealt with his volatility by saying something like, look, if it helps you to vent, I'm tough, I can take it.

Now, I don't know whether there will be evidence to that effect, but I have heard things at various times, some of which came from Mr. Glenn, that suggests that that could be a potential issue. That would not present the problems that a claim -- a defense of provocation on which there would be a jury instruction.

I do expect there will be a jury instruction about how would the alleged threat be understood and generally understanding is contextual, and some of that could cut both ways. So maybe it allows Mr. Cloherty to put in some evidence about what Ms. Melone told him in prior interactions, but it also makes potentially more relevant the nature of the criminal conviction and not for propensity but for a different purpose. How it would be understood.

So those are -- you know, I could see those things cutting both ways, and I would have to carefully assess each of them after I've got my jury instruction down.

So I agree those would be potential issues that I think it would be wise to flesh out in advance.

Other than that, Mr. Green, your case sounds pretty

straightforward.

Mr. Cloherty will at some point have to disclose his alleged expert if you haven't disclosed the person. So that should be no surprise. If there are in limine motions about that, we might need to take up that at some point.

Otherwise, it seems to me relatively straightforward and -- you know, of course if he doesn't decide to come to trial and he's not there, there will be some instructions I have to give about that issue, but I'm hoping we don't end up in that particular situation.

All right. Anything else from you, Mr. Green, that you wanted to take up with me about the trial? I'm sure you can talk to colleagues here about how we do jury selection. I don't think it will be radically different. We do some things with microphones now in the post-COVID world that we didn't do, but it all works in a pretty similar fashion to the way you do it up in Maine.

But if you have questions, check with them, and you could talk to my case manager if you had specific concerns. But if there's anything you want to know about voir dire, jury selection, anything like that, you can raise it now or we can take it up when we start.

MR. GREEN: Thank you, your Honor.

And I will consult with my colleagues.

And for what it's worth, I did try a case before

Judge McAuliffe when I was at DOJ in D.C., and I do recall jury selection was a little different. There were cards and a board, it's very different than I've done in any other court, but I will not bother you with it, your Honor. I will ask AUSA colleagues.

THE COURT: Yeah, the one thing that -- as you know, there's so many different ways in which juries are picked around the country and certainly differences between federal and state court, but even among federal courts.

We do a modified struck system. We used to pull names out of a box while the jury was there. We now have a preselected. We randomly draw and follow that so people know who the potential jurors are at the beginning.

There's -- when you exercise your challenges, the traditional way they do it here, which was somewhat new to me when I first got to federal court for a jury trial, is there are juror cards that are placed in a board so you can see in what order the jurors have been preliminarily identified so that you can understand if a juror is struck, who the next person up will be. I think it's a pretty good system. Once you see it, it works pretty well.

But I do primarily judge-conducted voir dire. I take your written requests and usually cover them in my own way. Sometimes I'll ask counsel -- usually I can decide whether a juror is qualified or not after questioning a juror.

Sometimes I'll ask counsel, do you have additional questions you want me to ask, but I generally do the voir dire.

Otherwise, it works similar to the way struck method judge-conducted voir dire is. I ask a series of questions to the jury as a group. I ask them if they answer yes to any of my questions or if they have any other concerns, that they will be given an opportunity to speak to me. We then go through the entire jury group and excuse people who have issues. They come up now to a microphone. We all put on headsets, including your client, and the juror whispers into the microphone. I hear it. I usually rule they're in or they're out.

If I have concerns, I'll ask counsel what their views are. If I make a ruling and you think, this is outrageous, I need to get something on the record, you can just say, can I speak to the Court, and I'll let you put on the record what your concern is. And maybe there's a chance I'll reconsider and seat the juror, but probably not.

And we'll go through and have a number of jurors, plus the alternates, plus the number of challenges available, and we'll have that group of jurors.

Then you'll come up and you'll look at the board and we'll go through the challenges in the way -- and this is run by my case manager. I'm not involved with that directly unless there's some dispute, and there never is.

So that's basically the way jury selection works here.

I'll be interested to see what voir dire the parties have. There are issues because he's an inmate. That may be something on which Mr. Cloherty may want some kind of voir dire about, which I'm willing to give. I don't know. Sometimes lawyers justifiably think it's better to say nothing rather than highlight the issue or not highlight the issue. That's a tactical decision for counsel. If you ask, I'll try to find some way to address it.

Other than that, it's pretty straightforward.

Jen, will we have to reset deadlines for motions in limine, jury instructions, witness lists, exhibit lists, and so forth?

THE CLERK: Yeah. Once we get the motion to continue trial and that's granted and we have a trial date, I can get you a final pretrial order and we can put that all in there.

THE COURT: Okay. So we'll do that once we get the motion to continue resolved, and we'll specify for you deadlines for when we expect everything.

If you've got an expert, that's sometimes -- you just need to pay attention to the expert disclosure requirements as well. That can trip people up sometimes. Otherwise, everything else is straightforward.

Is there anything else that, Mr. Green, you want to take up with me?

MR. GREEN: No, your Honor. Nothing from the government. Thank you.

THE COURT: Mr. Cloherty, what else can I do for you?

MR. CLOHERTY: Nothing today, your Honor.

I think the ball is in my court to get that motion to you promptly. So I'll do that.

THE COURT: Okay. Super. I'll look for that.

And I don't think we need to have another conference unless someone asks for it. I'll look at the motions in limine, and probably following the jury draw we can take up -- hear you orally on any of the motions in limine. I'm not -- sometimes I'm able to take up jury instruction issues with you. Sometimes not until later. I'll definitely give you an opportunity to be heard on that before I make any final decisions. So I won't plan to see you again until the jury draw, and we can take up other issues after that. Other issues except for voir dire after we get the jury drawn, okay?

All right. I'll look for a motion to continue, and I'll get an order out and we'll move on from there. All right.

Thanks, guys. I'll see you the 3rd unless something changes.

MR. GREEN: Thank you, your Honor.

MR. CLOHERTY: Thank you, your Honor.

(Conclusion of conference at 3:55 p.m.)

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings to the best of my knowledge, skill, ability and belief.

Submitted: 3-18-26 /s/ Susan M. Bateman
SUSAN M. BATEMAN, RPR, CRR