** NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6-25-2026 **

UNITED STATES DISTRICT COURT
CONCORD, NEW HAMPSHIRE
CASE NO. **23-CR-00112-PB-AJ-1**

---

**UNITED STATES OF AMERICA,**
Plaintiff
vs. **February 10, 2026**

**CHARLES GLENN,**
Defendant.

---

**CHANGE OF PLEA HEARING AND SENTENCING**

BEFORE THE HONORABLE **PAUL J. BARBADORO**,

UNITED STATES DISTRICT COURT JUDGE

---

**A P P E A R A N C E S**

FOR THE PLAINTIFF: UNITED STATES OF AMERICA — **SEAN GREEN**, AUSA, Department of Justice

FOR THE DEFENDANT: CHARLES GLENN — **DANIEL JOSEPH CLOHERTY**, ESQ, Cloherty & Steinberg LLP

REPORTED BY: **GIZELLA BAAN-PROULX**, FCRR
Official Court Reporter
United States District Court
55 Pleasant Street
Concord, NH 03301
(603) 225-1454
Trialreporters@hush.com

***P R O C E E D I N G S***

*(The following proceedings were held in open court.)*

**THE COURTROOM CLERK:** Please be seated. This Court is in session and has for consideration a change of plea in criminal matter 23-CR-112-PB, United States of America versus Charles Glenn.

**THE COURT:** All right. Before I begin, the defendant has indicated that he intends to plead guilty pursuant to a plea agreement that has been filed with the Court, and that plea agreement specifies that the plea will be entered pursuant to Rule 11(c)(1)(C), which will be a binding plea agreement.

My intention and practice is not to accept the plea agreement until the time of sentencing, but because this case is so close to trial, I wanted to give some thought to whether I would accept the plea agreement or not. And if I was not willing to accept it, based on what I know now, there's no point in going forward.

So I thought about it last night. And based on what I know today, as long as Mr. Glenn is able to knowingly, voluntarily, and intelligently waive his rights and enter a guilty plea to the charge, my current intention is to accept the plea agreement. All right?

So I'm not going to formally accept the plea agreement today, but -- unless something changes between now and then or there's something that emerges in the presentence report that

causes me to change my view, my plan is to accept the plea agreement.

So I had some concerns about that yesterday that I expressed to counsel, and I thought long and hard about it. And based on what I know today, assuming Mr. Glenn waives his rights and enters a guilty plea, my current intention is to accept the plea agreement and enforce the terms of the plea agreement.

I won't formally accept it until the time of sentencing. If something changes, I could change my mind and ultimately reject the plea, but based on what I know today, I'm intending to accept it. All right? Everybody understand?

Okay. So Mr. Glenn, my understanding is you intend to plead guilty to a charge -- no, he can remain seated throughout the proceeding.

**MR. CLOHERTY:** Okay.

**THE COURT:** My understanding is you intend to plead guilty to one count of the indictment today; is that right?

**THE DEFENDANT:** Yes.

**THE COURT:** As I said, you can remain seated throughout the proceeding, even when the oath is administered. Just stay seated and raise your hand when the oath is administered. If you don't understand something I'm saying to you, interrupt me and ask me to explain it. Do you understand?

**THE DEFENDANT:** Yes.

**THE COURT**: All right. And I want to be clear. I know you very well. I know your background, all of that, but the questions I'm going to be asking you are things that I ask every single time I take a guilty plea, so I just wanted you to understand a lot of this I already know, but I just need to make the record.

How far did you go in school?

**THE DEFENDANT**: I got a GED, and I took some college courses.

**THE COURT**: And you don't have any difficulties reading, do you?

**THE DEFENDANT**: Remembering what I read.

**THE COURT**: Sometimes some difficulty remembering?

**THE DEFENDANT**: Yes.

**THE COURT**: So there are a couple of documents here that are important. I want to be sure that you've read those, you understand them, and you had a chance to talk to your attorney about them.

The first is the superseding indictment. Did you have a chance to read that?

**THE DEFENDANT**: Yes.

**THE COURT**: Oh, yeah. I'm sorry. I forgot to administer the oath. So let's ask you to -- remain seated and just raise your right hand.

Thereupon,

**CHARLES GLENN,**

having been duly sworn by the courtroom clerk, testified as follows:

**THE DEFENDANT:** Yes.

**THE COURT:** All right. So back to this, you've told me that you can read, but you sometimes have difficulty remembering what you've read. And I want to ask you about the plea agreement again. Did you -- excuse me, the charge against you, the indictment. Did you read that charge?

**THE DEFENDANT:** Yes.

**THE COURT:** And how about the plea agreement that you signed; did you read that?

**THE DEFENDANT:** Yes.

**THE COURT:** And did you have a chance to speak to your lawyer about both of those documents?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you feel you understand them?

**THE DEFENDANT:** Yes.

**THE COURT:** So I know very well about your mental health history. Ordinarily I would ask if there are any mental health problems. I know you have some mental health problems. I'm very familiar with the competency evaluations that have been performed in this case, and I will take into account the information I know from those competency evaluations in evaluating your ability to plead guilty to the charge.

Okay. Are you taking -- tell me what medications you're taking today because I'm not familiar with that.

**THE DEFENDANT**: I'm on some -- a beta blocker for heart disease; Cardipres for my heart also. I have persistent hypertension, but I'm also on some psychiatric medication: Strattera, Trazodone, and Depakote.

**THE COURT**: And are those medications that were relatively recently started, or have you been taking those for a while?

**THE DEFENDANT**: Relatively recently started, and then a couple of them, I couldn't actually start taking until the last two days because they were crushing them and causing, I guess -- they don't recommend that you crush them because they cause stomach pain, but for the last two days I have been taking them.

**THE COURT**: Do you feel that any of those medications interfere with your ability to think in any way?

**THE DEFENDANT**: Yeah, they help me. They help me relax a little bit. And, you know, I don't feel as anxious as I normally do.

**THE COURT**: All right. So on balance, you think they're beneficial to you?

**THE DEFENDANT**: Yes.

**THE COURT**: Are you taking any illegal substances today, or are you under the influence of alcohol?

**THE DEFENDANT:** No.

**THE COURT:** And do you follow -- are these medications all being prescribed by a physician or psychiatrist?

**THE DEFENDANT:** Yes.

**THE COURT:** And are you following the instructions with respect to the taking of those medications?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. If this case were to go to trial, you would not have to prove your innocence; the government would have to prove your guilty beyond a reasonable doubt. Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** And again, I know you know a lot of this stuff very well. It's, again, the formal process of going through it. So if the government would have to prove certain things called elements of the offense.

And under the plea agreement in this case, you're going to be pleading guilty to count 2 of the superseding indictment. That count charges you with making an interstate threat by using the mails in violation of 18 USC Section 876(c).

That charge has certain elements, things each of which would have to be proved by the government at your trial beyond a reasonable doubt in order for you to be found guilty.

Those elements are summarized in the plea agreement.

I want to ask you about them to make sure you understand them. And if you look in the plea agreement itself, you'll see those elements described at page 2, in section 2, statute and elements of the offense.

The first thing that the prosecutor would have to prove is that you knowingly deposited or caused to be deposited in the mail for delivery by the postal service a communication containing a threat as charged;

Second, the prosecutor would have to prove that the nature of the threat was to injure any person;

Third, the prosecutor would have to prove that the threat was a true threat;

And fourth, the prosecutor would have to prove that you consciously disregarded a substantial risk that your communication would be viewed as threatening to injure any person.

Just -- it's not in the plea agreement itself, but just to explain what I understand this concept of a true threat to be.

A true threat is a threat if it was a -- a threat is true if it was made under such circumstances that a reasonable person in hearing or reading the statement and familiar with all of the objective circumstances under which a statement was made would understand it as a serious expression to commit an act of unlawful violence.  Jokes, hyperbole, or other

statements that, when taken in context, do not convey a real possibility that violence will follow are not true threats.

So those are the things that the prosecutor would have to prove in order for you to be found guilty. Do you understand all of that?

**THE DEFENDANT**: Yes.

**THE COURT**: Section 3 of the plea agreement is called offense conduct, and it contains a brief description of some of the evidence that the government would introduce against you to prove the charge against you.

Is there anything in that section of the plea agreement that you think is wrong?

**THE DEFENDANT**: No.

**THE COURT**: Are you pleading guilty to this charge because, in fact, you are guilty of the charge?

**THE DEFENDANT**: Yes.

**THE COURT**: I want to tell you about the maximum penalties. Again, I know you know all this, but it's something I have to do.

The maximum possible term -- not the term you will receive in this case -- is five years of imprisonment. The maximum fine is $250,000. You could be required to serve a term of supervised release of up to three years. If you violate supervised release, you could be sent back to prison. You will be required to pay a mandatory special assessment of

$100.

In addition to the penalties provided by law, the Court may order you to pay restitution. You could be -- now, the plea agreement on all of these things calls for different terms, and I'll explain all of that to you in a minute. Those are just the maximum possible penalties. Do you understand?

**THE DEFENDANT**: Yes.

**THE COURT**: Have you discussed with your lawyer how the sentencing guidelines may apply in this case?

**THE DEFENDANT**: Yes.

**THE COURT**: So when I sentence you, I will use those guidelines to determine a guidelines sentencing range. That's a range of months. After I determine that guideline sentencing range, I will treat the guidelines as advisory. That means I could sense you within that range of months, I could sentence you above it, or I could sentence you below it. Do you understand all that?

**THE DEFENDANT**: Yes.

**THE COURT**: You've entered into a plea agreement here. Everything you agreed to do in the plea agreement, you have to do. Everything the prosecutor agreed to do, he has to do.

For the most part, I'm not bound by the plea agreement; I decide for myself how to sentence you, but there is a section of the plea agreement that binds me in a limited way. I want to discuss those provisions with you now. That's

in section 6 of the plea agreement called Sentencing Stipulations and Agreements. It begins on page 4.

You've entered into agreements here pursuant to Rule 11(c)(1)(C) in this section, and those agreements are binding on me in a limited way. I will explain.

So first, the first thing that's been agreed to is that you should receive a sentence of imprisonment of 12 months and 1 day to be served concurrent with any state sentence already imposed in an appropriate disposition of this case. So 12 months and a day concurrent with any sentence you're currently serving.

Second, you should be subjected to a term of supervised release of one year that includes a special condition prohibiting contact with Victim Number One as named in the indictment.

And third, there's an agreement that you should not be subjected to any fine. Those agreements are binding on me in this limited sense. I will wait until the time of sentencing to determine whether to accept the agreements.

If I do accept the agreements, I'll go ahead and impose those sentences. If for some reason I decide I can't do it or that I'm not willing to do it, I'll stop the proceeding at that point and tell you I'm not prepared to accept the terms of the plea agreement.

If that were to happen, I would give you the

opportunity to withdraw your guilty plea, have your not-guilty plea reinstated, and your trial rights would be preserved, and you would go ahead and exercise those rights. Do you understand?

**THE DEFENDANT**: Um, okay. So today you're going to accept my plea but not sentence me?

**THE COURT**: That's right. Yeah, and I'll talk to you -- I can explain to your lawyer. One of the things your lawyer asked me is could I do an expedited sentencing, and I reviewed that with the chief probation officer, and there are certain issues that I feel I need to have done in a presentence report. And based on that, I'm not prepared to sentence you today.

I know from your lawyer that you may want to get back into state custody as soon as possible. I don't know if that's still the case, but I can accommodate that if it's something you want between now and sentencing.

**THE DEFENDANT**: My understanding -- so I was pleading guilty because my understanding was there was a great chance that this could be resolved today.

With that being said, I've been in solitary confinement now for the entire time I've been at the Stratford County House of Corrections, no investigation has been -- for over 70 days now, no investigation has been substantiated against me. I haven't done anything wrong. I haven't been

found guilty of any disciplinary tickets. While in transit, I got no disciplinary tickets.

And if I was to go back to the prison, because I'm housed in the Berlin prison, the only place that they would house me would be in SHU. I waited 48 days in SHU to get taken into federal custody.

So I would do that again, subject to segregation, even if I went back to the prison because I would have a pending -- I would have basically a pending court date.

So they're not going to want to bring me all the way back to Berlin to bring me all the way back down here for court, and I would have to be housed in SHU. That's why we got into that whole situation where I had to be taken into federal custody in the first place. Right?

**THE COURT**: Let me explore that. I want to try to accommodate you, to the extent that I can do it, Mr. Glenn, on this issue. I don't want you to have to spend any extra time in SHU if we can avoid it.

It's not something that I fully understood. My hope was that I could just have you brought up to the prison today so you wouldn't have to go back to Stratford County, if that's what you wanted.

But you're telling me even if we did that today, they would automatically place you in SHU unless the case against you was resolved?

**THE DEFENDANT**: Yes. That's why I sat in SHU 48 days waiting to come to court last time. They don't want to house me in Concord; they want to house me in Berlin, and they don't want to transport me all the way down here and back when I have these open docket issues pending.

**THE COURT**: Yeah. I hear you on that. Let me think this through and talk it through with you and your lawyer and the government.

If there's some way that I can accommodate you, I'm going to try to do that. So, you know, bear with me as I think this process through.

**THE DEFENDANT**: Or even if I have to wait a week or two or to -- I want to take the plea and resolve this. I was hoping to do it today.

**THE COURT**: Yeah, I know.

**THE DEFENDANT**: My thing is even if the prison is not willing because the prison had an attitude even with your writ-ing and making your recommendations, their attitude last time was "we do what we want", and they weren't helpful, really, at all. So even if I --

**THE COURT**: Let me just -- you're talking about the state prison?

**THE DEFENDANT**: Yeah.

**THE COURT**: You're saying even if I get you back there today --

**THE DEFENDANT**: Yeah.

**THE COURT**: -- you're telling me that they will put you in SHU because you have a pending federal court date?

**THE DEFENDANT**: Yes. And because they don't want to house me in Concord, and I'm all the way up in Berlin, as long as I have to come back and forth to court, they're going to house me in SHU or the receiving diagnostic unit, which is also a form of solitary.

**THE COURT**: If I were to send you back today, they a probably would put you in SHU for a while anyway, because when someone comes in new, even if they had done a form of prison, if that -- but it would be for a shorter period of time, you think?

**THE DEFENDANT**: It would be -- not necessarily because I'm technically not a transfer. I'm technically just a writ. I'm basically just out of court. So I've been on the roster, even though I haven't been there.

**THE COURT**: They might -- but they might put you in SHU, right, but it would be for a shorter period of time.

**THE DEFENDANT**: Yeah.

**THE COURT**: You're saying if we completed the sentencing today your -- I think there's a possibility they might put you in SHU for a while anyway because you may have an argument; they might treat you differently.

Normally my experience is when people have been out of

the system for a while and they go back, they get SHU, but it would be for a shorter period of time. Whereas, if I don't sentence you today, it's probably about 70 days until I could get a presentence report done. So it would be a couple of more months in prison in SHU, which is burdensome to you. That's what I'm hearing.

**THE DEFENDANT**: I mean, I have mental illness. I feel like I decompensate in segregation.

**THE COURT**: I'm telling you I'm sympathetic to that concern, so bear with me while I try to work it out.

**MR. CLOHERTY**: Thank you, Your Honor.

**THE COURT**: All right. Yeah.

**THE DEFENDANT**: The only other suggestion I have is if I had to go back to Stratford, I mean, I'm housed technically by the marshals. Greg has the authority to say, "hey, you haven't given this kid a ticket; he said he was here for -- he did this and this wrong, unsubstantiated, put him in population. He shouldn't be housed like this." I don't know if -- but then again we risk the county jail saying, "we're the county corrections; we do what we want."

**THE COURT**: Yeah. All right. I don't think that's a good option. I mean, I think we ought to get you back up to the state prison as soon as we can. I see -- I know --

Mr. Buckley, you're not the assigned officer in this case, are you?

**PROBATION**: I am.

**THE COURT**: And you're not prepared to answer these questions necessarily, so if you're not comfortable with it, let me know.

But I did talk to the chief probation officer about this case. Mr. Bendzunas did send me up some proposed supervised release conditions. I do have a copy of the defendant's criminal record. I do know his minimum release date. As I said, I already have probably a more-detailed understanding of Mr. Glenn's mental health history, his background, than I would in a case in which I had a full presentence investigation report.

My biggest concern is whether you think it would be problematic for the probation office for me to go forward today -- assuming everybody waives their right to a full presentence report -- and take the standard conditions that Mr. Bendzunas had suggested and just go ahead and sentence him today.

Would that be problematic for the probation office? If it is, be frank with me and tell me about it.

**PROBATION**: I don't believe it would. Obviously, by waiving the presentence report, we wouldn't be doing the guideline calculation. I can confer with my office for a couple of minutes, but I don't see it to be problematic if we want to go forward today.

**THE COURT**: Yeah, I think Mr. Bendzunas was like -- I

18 of 61

think he was willing to try to accommodate the concern. He did send me up some conditions. All right.

Why don't you just quickly check back with him, and if there's a problem notify me. I'll ask my one of my clerks if you can go up and -- Mr. Bendzunas e-mailed me a set of standard conditions. Go and print those out for me.

Mr. Glenn, I'll try to accommodate you today.

**THE DEFENDANT**: Thank you, Your Honor.

**THE COURT**: I have to see how these things all work out, but I'm willing to try to do it because I recognize this has been a really burdensome process for you. It isn't my intention to make you spend more time in SHU than you would otherwise spend. And so if I can get this done, I'll try to do it, but I need to progress through the process and see where I am at the end before I make a final decision. Okay.

So if you can do that, Mr. Buckley, just check back in. Thanks.

So let me ask the government: You have a right to have a presentence report prepared in this case. I wouldn't proceed without your consent.

As said, I think I know more about Mr. Glenn than many people that I sentence with a full presentence report, so I'm willing to do it if the government is willing to waive its right, the defendant's willing to waive his right, and the probation office is satisfied that it's appropriate for me to

19 of 61

do so.

**MR. GREEN**: So in these unique circumstances, Your Honor, I will defer to the Court's judgment, and I will waive.

**THE COURT**: All right.

**MR. CLOHERTY**: And obviously, Your Honor, I raised this with you before, we are prepared to waive under Rule 32, as I mentioned. I'm not sure I've had a case where a judge has been more informed of the history and characteristics of the defendant with all that has been presented to you in the course over the last year. So we ever prepared to waive any presentence report under Rule 32.

**THE COURT**: I'm willing to proceed under the assumption that I will do that. I am not prepared to say anything about why I'm going along with the agreement today. I was going to defer that until the time of sentencing, but because this may be my last statement about this case, I do want to put on the record why I concluded to go along with the agreement, because my ordinary practice over many, many cases is to make time consecutive to an underlying sentence in a case like this.

That's what I ordinarily do, and there are reasons why I'm willing to deviate from that practice here. I still have concerns about it, but balancing all of the factors that I should be considering at sentencing, I am willing to defer to the government's proposed disposition of this case.

I just want -- so that everybody is prepared, if I do go forward with sentencing, I'm going to explain why I am doing what I'm doing for the record. Do you understand?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: All right. So Mr. Glenn, your preference is to proceed without a presentence report, and you are waiving any right to a presentence report that you have; is that right?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: All right. So back to the terms of the plea agreement, which are binding terms, as I've explained to you, and I just need to get your answer to this question on the record.

Those terms are binding on me in the limited way I've described, that is, I will go forward, and if I can't accept the plea agreement, I'll give you a chance to withdraw your guilty plea and have your not-guilty plea reinstated.

But if I go forward with the plea agreement, as is my intention right now, I intend to give you the sentence that has been agreed to. Do you understand?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Do you have any questions about the plea agreement that you want to discuss with me?

**THE DEFENDANT**: No, Your Honor.

**THE COURT**: There's one provision in the plea agreement that I want to review to you that is a non-standard

provision and that it's important to my decision to accept the guilty plea here.

And maybe the government -- oh, excuse me. It's Section 10. It's called the Protective Order Provision. And that provision, it's a short one. I'll read it to you, and then I'll explain.

The defendant agrees that the Court should -- should the Court find by a preponderance of the evidence and pursuant to 18 USC Section 1514(B), that harassment of Victim One existed and warrants the issuance of a three-year protective order on behalf of Victim One -- let me read that sentence again.

Defendant agrees that the Court -- is that the way you're intending the words to be there, Mr. Green?

**MR. GREEN**: Yes, Your Honor. I'm happy to read it.

**THE COURT**: No.

"The defendant agrees that the Court should find by a preponderance of the evidence and pursuant to 18 USC Section 1514(B) that harassment of Victim One existed and warrants the issuance of a three-year protective order on behalf of Victim One.

"The order will prohibit defendant from directly or indirectly harassing or otherwise contacting Victim One or her family. The defendant waives the right to a hearing under 18 USC Section 1514 before entry of that order."

I understand that provision, Mr. Green, to mean that you intend to make a request of the Court to issue the protective order authorized by 1514(B) and that the defendant has agreed to waive his right to a hearing on whether such an order should issue.

Is that how you understand that provision?

**MR. GREEN**: That is how I understand it. That was our intention.

**THE COURT**: And are you making an oral request that I, in fact, issue a protective order under Section 1514(B)?

**MR. GREEN**: I am. And I can do that now or I can wait until sentencing if that's today, but, yes, I will make that motion. And I do have an order, and we can provide that.

**THE COURT**: And that order will be for a three-year period in effect and subject to renewal as set forth under the statute under the terms specified therein.

**MR. GREEN**: That is correct.

**THE COURT**: Thank you.

So Mr. Glenn, I've read this to you, and I want to just go over it with you because this is not a typical thing in a plea agreement. It's authorized by law, but it is important to me that I know that you agree to this.

Do you agree that the Court should find by a preponderance of the evidence and pursuant to 18 USC Section 1514(B) that harassment of Victim One existed and warrants the

issuance of a three-year protective order on behalf of Victim One. Do you agree?

**THE DEFENDANT**: Based on my guilty plea to the charge today, yes, I do, Your Honor.

**THE COURT**: And that's right. That's exactly the reason for it.

And you also agree to waive your right to a hearing that you would otherwise have under that section of the statute. Do you agree?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Thank you. That's helpful to me.

Any problem, Mr. Buckley?

**PROBATION**: No problem waiving it. We will have to put on the J&C the guideline findings, but that's something we can either discuss with the Court, or we can just -- maybe the parties can get together and discuss and give it to Jen to put that information on the J&C.

**THE COURT**: All right. Yeah. So the judgment does have to include certain findings with respect to the guideline sentencing range. I reviewed that with the parties yesterday, and I expect the government will be able to recapitulate that statement on the record so that I can rely on the parties for their determination of the defendant's guideline sentencing range at sentencing.

**MR. GREEN**: That's correct.

**THE COURT**: So --

**MR. CLOHERTY**: Yes, Your Honor.

**THE COURT**: So we'll go ahead with that, Mr. Buckley. I will actually make finding about that based on representations that counsel have given me, and that those findings can then be recorded in the J&C. So if you can stand by.

**PROBATION**: And you have the list of conditions?

**THE COURT**: Matt, did you print those up?

**THE LAW CLERK**: Yeah.

**THE COURT**: All right. So what I will do is I will finish the plea colloquy. I will make my findings and rulings. I will defer acceptance of the plea agreement until the time of sentencing, but I will move immediately into sentencing after the conclusion of the guilty plea. And I will make various findings and rulings that bear on the defendant's sentence at that time, give Mr. Glenn an opportunity to speak if he chooses, have an opportunity for me to explain my sentence, and then we will impose the sentence. And if everything goes the way I expect it will, you're done with us today. Okay?

**THE DEFENDANT**: Thank you, Your Honor.

**THE COURT**: All right. So let me go pick up where I left off.

So now that I've explained the plea agreement and the sentencing process and all of that, do you have any other

25 of 61

questions about the plea agreement that you want to discuss with me?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** By pleading guilty, you're giving up certain constitutional rights that you have. I want to review those rights with you to make sure you understand them.

You have the right to a trial that would be in front of a jury, the jury would consist of 12 people, you could not be found guilty unless all 12 people find you guilty beyond a reasonable doubt. Do you understand?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You would have the right to have an attorney represent you at no cost to you. You would have the right to have witnesses brought into court by subpoena at no cost to you to testify for you. You could testify at your trial if you wanted to. If you instead wanted to remain silent, you could. If you chose to remain silent, I would tell the jury that it could not hold your silence against you in any way. You could be present throughout the trial, and you could have your lawyer cross-examine any witnesses who will testify against you. Do you understand all of that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** By pleading guilty, there are provisions in the agreement by which you're also waiving your right to appeal the conviction and sentence or to challenge it in any

collateral review proceeding. Collateral review is any kind of post-appeal challenge to your conviction and sentence. It would include habeas corpus motions or 2255 motions.

There are some limited exceptions that I will go over with you in a minute, but those will be the only exceptions. The general rule will be no appeal, no collateral review if I accept your guilty plea. Do you understand?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** So the exceptions, there are a couple of maybe three exceptions that you need to know about.

You could argue that you were not competent today when you entered your guilty plea in some kind of appeal or collateral-review proceeding. You could argue that your lawyer gave you constitutionally-ineffective advice.

If the Supreme Court of the United States or the First Circuit Court of Appeals came down with a new rule of law that they applied retroactively to someone in your position, you might be able to invoke that new rule of law.

If for some reason, I gave you a higher sentence than called for by the sentencing guidelines, your appeal and collateral review rights would be preserved. Those are the only exceptions. The general rule will be no appeal, no collateral review. Do you understand?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** So you won't be able to challenge your

guilty plea. You won't be able to otherwise challenge the suppression order I issued in the case, any motions to dismiss, any arguments under the Speedy Trial Act or the Interstate Agreement on Detainers, none of that. You won't be able to raise those issues, an appeal, or collateral review. Do you understand?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Has anyone promised you anything in an effort to try to get you to plead guilty to this charge, other than the promises contained in the plea agreement?

**THE DEFENDANT**: No, Your Honor.

**THE COURT**: Has anyone threatened you in an effort to try to get you to plead guilty?

**THE DEFENDANT**: No, Your Honor.

**THE COURT**: Has the government presented any formal plea offer to the defendant other than the one embodied in this agreement?

**MR. GREEN**: Yes, Your Honor. We have, although I should say that they evolved into this agreement. The first one beginning, I believe, on February 6th, but we just sort of amended through discussions.

**THE COURT**: So from my perspective, what I need to know -- because I need to ask the defendant about this -- were any of those plea agreements more favorable to the defendant than the one that is embodied in this agreement.

**MR. GREEN**: None was more favorable. The only substantive difference was which county we would have him plead guilty to. Under any iteration he was pleading guilty to one of two charges. We settled on --

**THE COURT**: Mr. Cloherty, do you agree with what the prosecutor has suggested?

**MR. CLOHERTY**: I do agree, Your Honor.

**THE COURT**: Thank you.

So by pleading guilty, you're giving up these certain collateral rights. And I say these things to everybody. If you're not a citizen, you could be deported. You can't possess firearms. There could be other collateral consequences of a guilty plea, such as your right to vote could be affected at certain times and places. Do you understand that?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Now, I ordinarily ask this question in a very broad way, and that is I ask, are you satisfied with the legal advice you've received from your attorney? I know you've at various times with Mr. Cloherty expressed frustration with him, even suggested that you were trying to fire him.

What I'm really interested in knowing today from you is -- and I need to know your honest answer on this; it's very important to me.

Are you satisfied that Mr. Cloherty has appropriately advised you with respect to the particulars of the plea

agreement today, with respect to your decision to plead guilty, and with respect to any potential sentence that I might impose?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Mr. Cloherty, there had been a motion to suppress that was filed here and ruled upon. And apart from that issue, to your knowledge, is your client pleading guilty because of any illegally-obtained evidence in the government's possession?

**MR. CLOHERTY**: No, Your Honor.

**THE COURT**: I also -- there have been issues raised about Mr. Glenn's competency at various times. You have had extensive and close prolonged interactions with Mr. Glenn. And there are in the competency documents references to the fact that Mr. Glenn has various mental health problems, and some of those mental health problems revolve around his interactions with his lawyers.

And I need to know from you, do you know of any reason why I should be concerned about Mr. Glenn's competency and his ability to evaluate this plea agreement and enter a knowing, voluntary, and intelligent guilty plea?

**MR. CLOHERTY**: I do not, Your Honor. I'll even note that I do believe that Mr. Glenn alluded to it before that the recent assistance of another expert in my view -- just my view -- has helped Mr. Glenn participate in a more meaningful way in his defense. So I think that has been helpful to the Court's

attention to it, but I do not have any concerns along the lines that you raised.

**THE COURT**: Thank you. And it is my judgment, as it was then, Mr. Glenn is competent. He definitely has mental health problems. He definitely has difficulty in working with lawyers, but he is competent. I have never really doubted that about Mr. Glenn, despite his mental health struggles. And he's a very bright, capable person who understands what he's doing, and he's well able to make important decisions. So I don't have any doubts about it, but I did need to go through that process.

So we're coming to the end of the guilty plea process, Mr. Glenn. We'll deal with the sentencing in a minute, but this really is the last chance you have to change your mind about the decision to plead guilty. Do you feel you have had enough time to think about your decision?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: Do you still wish to plead guilty?

**THE DEFENDANT**: Guilty.

**THE COURT**: I'll take your guilty plea. You can remain seated through this process.

As to count 2 of the indictment, charging the defendant with violating 18 USC Section 876(c) by using the interstate mails to communicate a threat, how do you plead to that charge, guilty or not guilty?

**THE DEFENDANT:** Guilty, Your Honor.

**THE COURT:** Having questioned the defendant and his counsel on the offered plea of guilty, the defendant and his counsel having informed the Court that they have conferred on the offered plea of guilty, and the proposed plea agreement, and the Court having determined that the defendant does not appear to be under the influence of any drug, medication, or other substance which could affect his judgment in any manner, that the defendant is competent, and that the defendant has a full and complete understanding of the charge against him and the potential consequences of his plea, that no promises have been made to him apart from the statements set forth in the written plea agreement and no threats or coercion have been brought to bear upon the defendant in any way, accordingly, the Court determines that the defendant's plea of guilty is knowingly, voluntarily, and intelligently made with full knowledge of the charge against him and the consequences of his plea. No threats or coercion have been exerted upon him in any way and no promises have been made to him apart from the statements set forth in the plea agreement.

Accordingly I find the defendant guilty of Count 2 of the indictment, and I am prepared to proceed to sentencing today, and I am prepared to enforce the terms of the plea agreement at sentencing.

All right. So the first thing I want to make sure,

Mr. Glenn, is that you are giving up your right to have a full and complete presentence report prepared in this case.

Is it your intention to waive your right to have a presentence report prepared?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: And do you understand that I will go ahead and sentence you today without the benefit of that presentence investigation report?

**THE DEFENDANT**: Yes, Your Honor.

**THE COURT**: All right. Now, I'd like the government to summarize for me your guideline sentencing calculation that you went through in this case. I'm going to ask Mr. Cloherty if he concurs that that is an appropriate guideline sentencing determination for Mr. Glenn. And I will make findings and rulings based on your joint agreement with respect to those matters.

**MR. GREEN**: Thank you, Your Honor. Your Honor, getting to this plea agreement, Mr. Cloherty and I had discussions about what we viewed -- and correspondence that viewed the guidelines to be, and we believe that his criminal history, Mr. Glenn's criminal history, is a 3, based on our review of his criminal history.

**THE COURT**: And he has an extensive criminal record, but the reason why he's a 3 is that a number of his prior convictions are sufficiently aged that they aren't countable

for criminal history category determination. I've looked at his record. He does have a substantial record and very serious charges that he's been convicted of, but I don't have any reason to question your judgment that he qualifies with that criminal history category.

**MR. GREEN**: Yes, Your Honor, that is correct. Mr. Glenn has been incarcerated for some time and probably by virtue of that, a lot of his criminal history has aged out. And so we believe that he has 6 points, which would correspond with a category 3.

**THE COURT**: All right.

**MR. GREEN**: The sentencing, we believe that he has 12 points for the count of conviction, and that is under 2A6.1, which addresses the threatening or harassing communications; base offense level 12, we did not see any specific offense characteristics that we believe apply.

Under the plea agreement, the defendant would get the benefit of acceptance of responsibility, which would reduce that number by 2, so now we're at 10. And with a criminal history of 3 and 10 points, we have a guideline range 10 to 16 months.

**THE COURT**: All right. And this sentence would be within the guideline range?

**MR. GREEN**: It would be, Your Honor.

**THE COURT**: Mr. Cloherty, do you disagree with

anything that Mr. Green has said.

**MR. CLOHERTY**: I do not, Your Honor.

**THE COURT**: Those seem to be consistent with my understanding of how the defendant would score out on a presentence report, and I'm prepared to accept your representations. And on the basis of those undisputed representations, I am prepared to find -- make those findings with respect to the defendant's criminal history category base offense level and total offense level with the adjustments that you propose. So the J&C will reflect those determinations.

And I ask our probation officer, are you satisfied with that as a basis for the inclusion of those numbers in the J&C.

**PROBATION**: Yes. I can get the final range in a few minutes.

**THE COURT**: Okay, good. And we're not imposing a fine here, but we need to specify what the fine range is. So that will happen.

And with respect to the terms of supervised release, you probably haven't seen those yet, Mr. Cloherty, have you?

**MR. CLOHERTY**: I haven't. I'm generally familiar with standard conditions. I know there's a special condition, obviously, here with respect to Victim One.

**THE COURT**: I think what we probably should do, though, is take a short break in a minute and have you review

those conditions with Mr. Glenn because I want to be sure he understands them and does not object to them.

So when I get through this process, I will have us take a short break, then I'll come back and impose the sentence, and then I'm going to turn to you for your oral motion with regard to the protective order.

**MR. GREEN**: Thank you, Judge.

**THE COURT**: Okay. So we'll do that, and I'll have those -- make copies for him to review and for the government to review to make sure that those orders -- those supervised release conditions are acceptable.

All right. So I've determined the defendant's guideline sentencing range, his total offense level, his criminal history category.

The government's sentencing recommendation is as set forth in the plea agreement. Is that right, Mr. Green?

**MR. GREEN**: Yes, Your Honor.

**THE COURT**: And I am prepared to accept that sentencing recommendation for what is a within-guideline sentence.

Mr. Cloherty, do you, in any way, challenge any of the findings I've made with respect to the defendant's guideline sentencing range, his criminal history category, and his offense level?

**MR. CLOHERTY**: I do not, Your Honor.

**THE COURT**: And I know you've bound yourself -- neither of you are you presenting any motion for variance in this case. Is that right, Mr. Green?

**MR. GREEN**: That is right for the government.

**MR. CLOHERTY**: That's right, Your Honor.

**THE COURT**: So I am, as I said, prepared to impose the sentence that the parties have stipulated to.

Mr. Green, do you want to say anything with respect to the defendant to the proposed sentence here?

**MR. GREEN**: I do. And this is -- I'll try to be brief. I want to convey some of the things that I said to Your Honor in our meeting yesterday.

What has weighed on me and what was a big factor in my thinking and in my office's thinking and the government's thinking was what this case means to the victim, to Ms. Malone. I conferred with her and her attorney. Her attorney is actually present today in the courtroom. And what I took from that is what is most important to her is that there be a conviction, and a priority for her is just that there be no more contact.

And if we were to go to trial, she would have to come in, and she would, and in my view, based on my preparation with her and my assessment of the evidence, she would be a good witness, she would be credible, and things would go well for the government, but it's not something she would want. She

would not enjoy it. That is an understatement. It would be an unpleasant experience for her.

She would get what she's really looking with some finality from this agreement, and I think that's why this is a just and proper agreement, and that is what has weighed on me the most in presenting it and presenting it to Your Honor for acceptance.

And I heard your reservations the other day, Your Honor, and I understood them. And I am -- I know you will articulate those on the record, but they are as much the same as mine in thinking about what resolution would be appropriate here.

But I think this is the right resolution for the victim and under all the sentencing factors under 3553(a), and especially, considering I think the unique circumstances with respect to Mr. Glenn's terms of incarceration and how long he's in already and what we would be looking at even with the trial conviction in terms of exposure for criminal sentence.

**THE COURT**: All right.

**MR. GREEN**: And the only other thing I would like to say, Your Honor, when I discussed this case, I reached out to the victim and her attorney about whether or not they want to be heard in advising them: "You absolutely have a right to be heard at sentencing, that could be done a number of ways, you can appear, you can read a letter, I can read a letter."

She did not wish to do that, but she did wish to convey something that I know the Court is well aware of, even without my conveying it, and that is that this was a difficult professional and personal experience for her, which I know is not lost on Your Honor.

**THE COURT**: And just to follow up with a couple of questions. You completely fulfilled your responsibilities under the Victims Rights Act with respect to dealing with Ms. Malone, I assume?

**MR. GREEN**: That's correct.

**THE COURT**: And she is supportive of this particular disposition; she wants the Court to accept this plea agreement. Is that right?

**MR. GREEN**: That is correct. And as I advised her -- her counsel is here -- and I consulted with them along the process and even this morning before coming in, and she's advised of this, and she wants this is my understanding.

**THE COURT**: And one of the factors that influences me that I'll allude to in accepting this proposal is that Mr. Glenn is already scheduled to serve a very substantial sentence.

My understanding is minimum release day is currently something like 2050. Is that consistent with your understanding?

**MR. GREEN**: That is my understanding, and I'm basing

that on a conversation that I had with Mr. Jay Mackey -- I relayed that to Ms. Bartlett -- but I understand he's the director of operations for the New Hampshire Board of Parole.

**THE COURT**: All right. And those things are -- and I'll comment more on those when the time comes. Those are all important considerations in my decision to accept this particular agreement, as it is yours.

**MR. GREEN**: Correct.

**THE COURT**: And I'm not being, in any way, critical of the government here. I have to make an independent assessment of the appropriateness of the sentence under the sentencing factors. And it's a hard call here for me to make because there are concerns that are intention that the Court has to balance and -- as did you, and you've done it, and I'm prepared to defer to your -- the way in which you balanced those competing concerns, in no small part because I had had zero contact with the victim in this case, obviously, and I am relying on you to be relaying your interactions with her and what her preferences are, which aren't controlling here. I don't want anyone to think that that's true, but they weigh heavily in a threat-type case, particularly in this type of case. So I appreciate your comments.

**MR. GREEN**: Thank you, Your Honor.

**THE COURT**: Mr. Cloherty, what, if anything, would you like to say on your client's behalf? And I'll give him a

chance to speak if he wants to.

**MR. CLOHERTY:** Of course, Your Honor. And I don't have to much to say about the government's position. I think the Court is well aware this agreement was reached as part of a fair, you know, and difficult negotiation with the government. And it is designed to sort of achieve what we do think does achieve the purposes of the sentencing statute.

I will only add to -- I -- the purposes that the government advanced in terms of why we should accept it, I agree with, but I'll also add, over the course of the past -- I guess I'll say 9 months; I can't recall when I first made my appearance -- I've come to know Mr. Glenn. We have had many, many conversations. We have had our ups and downs about that. But one thing that's been consistent with him is that he is a thoughtful, smart individual.

He has had many challenges in his life, challenges that unfortunately have put him on a path where he does still have a difficult future with his state sentence, but there's -- there is merit to him.

He has -- and I saw some of it even today with his exchange with the Court, and I know the Court recognizes it. So one of the factors -- and I recognize it's not the only factor that the Court is considering in fashioning a sentence -- is the history and characteristics of the defendant.

You know, there are challenges to that history, no

doubt, but there are also characteristics that have -- that do periodically shine through, and that I do think this sentence and getting this very difficult case behind him will help him and will help everyone involved to move on past what was a difficult situation under any circumstances.

I appreciate the difficulty that the victims experienced, it was difficult in many ways for Mr. Glenn. And it has been, you know, being in this case and litigating this case has been difficult. But I do want to just point out that he is -- in my view, he is not a lost cause. He is a thoughtful, smart individual. He has a long pathway ahead of him, unfortunately, but I still am hopeful for him, and I will try to support him as he moves forward, even though we may be talking about decades in the future to try to support him to sort of rebuild what he can of his life.

So I think that is another piece of a larger puzzle that the Court has to consider when it's fashioning a sentence and when we take that piece and look at all the other factors -- I'm not going to belabor all the other factors that the Court has to consider -- I do think the proposed resolution to Your Honor is an appropriate and just resolution for this matter. So I think I'll just leave it at that.

**THE COURT**: All right. Thank you. So I do think I have had an opportunity to understand some of the challenges that Mr. Glenn has had in his life, which are just

extraordinary. I mean, sadly, many of the defendants that I sentence have had very troubled backgrounds. Mr. Glenn has had really difficult challenges in his life. Doesn't in any way excuse what he did here, and I don't want to diminish that, but I do feel I have a good understanding of the personal challenges he's faced growing up.

I have already expressed my view that I have no doubt of his competence, but that doesn't mean he doesn't suffer from significant mental health. I think he does suffer from significant mental illness. He's a very smart, capable person, but he suffers from mental health issues. I find largely that a diagnosis of his own competency expert to be consistent with my understanding of the mental illness issues that Mr. Glenn struggles with.

Again, they don't excuse his behavior, but I'm aware of those things, and I have really tried to take that into account, and I will say more about that when I accept the sentence in just a moment.

Mr. Glenn, you have an opportunity to speak. You don't have to say anything. I won't hold it against you if you don't, but if there is anything you want to say, I'll be happy to hear it. Would you like to speak?

**THE DEFENDANT:** Yes. Yes, I would like to address the Court.

First, I'd like to apologize for any outbursts I've

had in your courtroom. I get overwhelmed. I pop off. I normally try to walk away and get out of them.

And whether or not Ms. Malone was willing to put up with some of my bad verbiage, it was against -- wrong. It was against the law, and categorically it was wrong for me to talk like that, and I shouldn't have did that. And if it gives the victim some peace of mind for her to have this plea, then I think it's best that way.

Since this has occurred, I've been in a mental health unit for over two years. I've been doing a lot of working on myself. The first time I had an issue, me and Robin, it actually -- like I actually took an anger management class, and she supported that I do that to try to work on myself, and I still failed. I still fucked up. I'm sorry.

**THE COURT**: It's all right.

**THE DEFENDANT**: Yeah. I just want to get back to the prison and hopefully get into my mental health unit and continue to work on myself and figure out why I don't tap into my executive function when I get overwhelmed, and I do things that I, unfortunately, have had to pay for my entire life.

**THE COURT**: All right. Well, I appreciate that. I mean, I personally appreciate your apology for the emotional outbursts when they have occurred, and I have to say, for the most part, you really made efforts to restrain yourself in dealing with me. And I appreciate that takes some effort when

things aren't going your way. So we can -- I fully understand that. I've never held any of that against you.

It's frustrating, and I've obviously had to spend a lot more time on this case than I would have liked, but I don't hold any of that personally with respect to you.

So, but I appreciate your comment about this is the benefit that Ms. Malone wants is to bring closure to this matter and to have no further contact with you. And that is probably the most important thing that you can take from this is that it is better for you, and it is definitely better for her that you not in any way attempt to have any contact with her.

And as you'll understand in a few -- and I think you already know, but if you were to do that in violation of the order, it would be -- you could get additional consecutive prison time added to your sentence, and it just isn't in your interest to do that. And I think you are, at the end of the day, capable of doing things that are in your interest, and it is -- everything is structured here as strongly as possible, make it in your interest not to reach out to Ms. Malone because it would be bad for her, and it would be very bad for you. And that's probably the most important thing to take from this process, but I do appreciate your comments.

**THE DEFENDANT**: I will not. I haven't reached out to Ms. Malone in over five years. I will not reach out to

Ms. Malone at all.

**THE COURT**: And I don't have any reason to doubt that. There is no evidence to the contrary. All right.

So let me read the proposed sentence. And what I'm going to do is I'm going to impose the sentence as agreed to with the supervised release conditions, but after I complete the sentence, they will be conditional upon taking a short break, reviewing those conditions with Mr. Glenn, and getting his concurrence on the record that he understands the conditions and they're acceptable to him.

**MR. CLOHERTY**: Thank you, Your Honor.

**THE COURT**: So let me read the proposed sentence. And then I will state my reasons why I'm accepting the proposed sentence.

So pursuant to the Sentencing Reform Act, the Court imposes the following sentence on the defendant. The defendant shall be sentenced to a term of imprisonment of 12 months and one day to be served concurrently with any state sentence already imposed.

Second, that a term of supervised release of one year shall be imposed. That includes a special condition prohibiting contact with Victim One.

Third, the Court determines that no fine shall be imposed in this case and no restitution shall be ordered.

The terms of supervised release will be as specified

in the supervised release terms to be -- to be provided to the defendant and reviewed with him in a moment.

So let me explain my sentencing judgment. This has been a very difficult sentencing judgment for me to accept. And notwithstanding the things I've said about Mr. Glenn, which I believe are true, he does have significant mental health issues. He has struggled very substantially with mental illness.

The criminal conduct here is extraordinarily serious to me. It's among the most serious of threats one can level is the threat to kill someone's children. And they are serious threats. They needed to be understood as serious threats. And the nature of the criminal behavior here is extraordinarily serious.

Second, Mr. Glenn, although he scores as a criminal history category 3, has a very serious criminal record. And I accept that he's going to try to deal with his mental health issues going down the road, but he's a person that currently, in my view, poses a very serious danger to the public.

Hopefully, in the time that goes by between now and the completion of your sentence, that you will continue to work on your mental health issues and that no one is beyond redemption, and no one is beyond rehabilitation, and you're going to have a substantial time to work it out. But I do think your criminal record says to me that you are a person who

does pose a significant risk to the public. And that ordinarily I would weigh heavily in my sentencing judgment here.

So when I consider the importance of public protection, a fair sentence, individual deterrence, general deterrence, ordinarily I would be thinking of a consecutive sentence here for you rather than a concurrent sentence, not a sentence of the statutory maximum but a sentence that would be a little bit higher than the one I'm agreeing to today and that would be imposed consecutively to the sentence you're currently serving.

Why I've been persuaded not to do that is primarily a concern that this would be injurious to the victim to have to go through this process, that she strongly prefers that she not have to be gone through the ordeal of a trial, that she wants to bring closure to the process, and that I think the plea agreement does contain an agreement for an order under -- let me ask Mr. Green.

Can you direct me to the page of the plea agreement that --

**MR. GREEN**: Sure. It's page 8, paragraph 10. And if you were looking for the citation, it's 18 USC 1514.

**THE COURT**: So the fact that this plea agreement contains a stipulation by Mr. Glenn to waive his right to a hearing to the entry of an order pursuant to section 1514(b) is

important to me in this case.

His willingness to give it up is a recognition that he suggests to me he is sincere when he's saying he recognizes it's not -- he's not going to have contact with Ms. Malone in the future, and that's important that he's showing me by his willingness to agree to that, that he isn't going to be intending to reach out to her, and also that there are serious consequences that follow from a violation of that provision which could subject Mr. Glenn to additional prison sentence.

That's very important to me in this case. In a threat case, I think you have to pay special attention to the concerns of the victim. Balance against that are the public interests here in general deterrence, in a just sentence, which ordinarily would require in my mind a higher sentence than the one I'm agreeing to here. But considering all of those things and the fact that the government has informed me that this has not been a plea offer that was offered for the first time on the eve of trial, the government was -- has a strong case, was confident that it was going to obtain a conviction. Instead, though, he had been offering this proposal or something similar to it for a substantial period of time, and I do think to some extent it would be unfair to Mr. Glenn at the 11th hour to pull that agreement off the table and rendered it a nullity just because I am not -- it might not be the sentence that I would have otherwise imposed.

So I've tried to take all of those factors into account here, and although I would be inclined to impose a higher sentence but for the concerns I've raised, I am prepared to accept it. I do accept it. And accordingly, I impose the sentence that I've just read subject to Mr. Glenn affirming on the record that he is agreeable to the proposed supervised release conditions.

Are there any objections to the proposed sentence from the government other than those previously raised with me?

**MR. GREEN**: No objections.

**THE COURT**: Any objections from you, Mr. Cloherty?

**MR. CLOHERTY**: No, Your Honor.

**THE COURT**: All right. As I said, I'll impose the sentence as I've read it.

Mr. Glenn, you may have a limited right to appeal. If you want to appeal, consult with your attorney and direct him to file a notice of appeal on your behalf; however, any notice of appeal does have to be filed within 14 days or you lose your right to appeal.

You can ask your attorney to file it, or you can ask the clerk's office for help, but it does have to be filed within 14 days or you lose your right to appeal.

I want to deal with the 1514 issue after a break. I want to deal with the supervised release conditions after a break. Otherwise, I feel I've completed the sentencing. Is

there anything else you feel I need to cover with respect to the plea or the sentencing?

**MR. GREEN:** No, Your Honor.

**THE COURT:** Anything else I have to cover that I haven't covered with respect to the plea or sentencing?

**MR. CLOHERTY:** No, Your Honor.

**THE COURT:** And if there's no -- I doubt it, but I find that Mr. Glenn has knowingly, voluntarily, and intelligently waived his right to have a presentence report in this case.

**THE COURTROOM CLERK:** Judge, excuse me. The fine that is provided by probation is $4,000 to $40,000, and I didn't hear a special assessment.

**THE COURT:** There will be a special assessment of $100 is imposed. It's required. I'm not imposing a fine. I'm not imposing any restitution. And otherwise, have I covered everything I needed to cover?

**THE COURTROOM CLERK:** Yes, Your Honor.

**THE COURT:** So we'll take a short break. Counsel, I don't know -- I defer to the marshal services as to whether you need to move him in, but he does need to meet with his lawyer for a few minutes, so you'll move him back, and he can meet with the lawyer back there.

And then we'll come back out and get his affirmance on the record that in essence those conditions are acceptable.

We'll get the oral motion, and I'm ready for a process for a proposed order to be submitted to the Court, and I'll orally accept the motion and direct you to file a proposed order if you don't have one already a proposed order I can look at and modify as necessary. That will be issued subsequently. After that you'll be on your way back to the prison. Okay. So we'll take a short break.

(Thereupon, a brief recess was taken.)

* * *

**C E R T I F I C A T E**

I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.

03/27/2026

DATE COMPLETED

GIZELLA BAAN-PROULX, FCRR

## $

**$100** [2] - 10:1, 50:14
**$250,000** [1] - 9:22
**$4,000** [1] - 50:12
**$40,000** [1] - 50:12

## 0

**03/27/2026** [1] - 52:8
**03301** [1] - 1:21

## 1

**1** [1] - 11:8
**10** [6] - 1:4, 21:4, 33:19, 33:20, 47:21
**11(c)(1)(C** [2] - 2:11, 11:4
**11th** [1] - 48:22
**12** [7] - 11:7, 11:10, 25:8, 25:9, 33:12, 33:15, 45:17
**14** [2] - 49:18, 49:22
**1514** [3] - 21:25, 47:22, 49:23
**1514(b** [1] - 47:25
**1514(B** [5] - 21:9, 21:19, 22:3, 22:10, 22:25
**16** [1] - 33:20
**18** [7] - 7:20, 21:9, 21:18, 21:24, 22:24, 30:23, 47:22

## 2

**2** [6] - 7:18, 8:3, 30:22, 31:21, 33:19
**2026** [1] - 1:4
**2050** [1] - 38:23
**225-1454** [1] - 1:22
**2255** [1] - 26:3
**23-CR-00112-PB-AJ-1** [1] - 1:2
**23-CR-112-PB** [1] - 2:5
**2A6.1** [1] - 33:13

## 3

**3** [6] - 9:7, 32:21, 32:24, 33:10, 33:20, 46:16
**32** [2] - 19:6, 19:11
**3553(a** [1] - 37:14

## 4

**4** [1] - 11:2
**48** [2] - 13:5, 14:1

## 5

**55** [1] - 1:21

## 6

**6** [2] - 11:1, 33:9
**603** [1] - 1:22
**6th** [1] - 27:20

## 7

**70** [2] - 12:24, 16:3

## 8

**8** [1] - 47:21
**876(c** [1] - 30:23
**876(c)** [1] - 7:21

## 9

**9** [1] - 40:11

## A

**ability** [3] - 5:25, 6:17, 29:19
**able** [7] - 2:19, 23:21, 26:18, 26:25, 27:1, 27:4, 30:9
**above-entitled** [1] - 52:4
**absolutely** [1] - 37:23
**accept** [27] - 2:12, 2:15, 2:16, 2:21, 2:23, 3:1, 3:7, 3:9, 3:12, 11:19, 11:20, 11:23, 12:6, 20:14, 21:1, 26:7, 34:5, 35:18, 38:12, 39:6, 40:9, 42:17, 46:4, 46:17, 49:4, 51:3
**acceptable** [3] - 35:11, 45:10, 50:25
**acceptance** [3] - 24:13, 33:18, 37:7
**accepting** [2] - 38:19, 45:13
**accommodate** [5] - 12:16, 13:16, 14:9, 18:1, 18:7
**accordingly** [3] - 31:14, 31:21, 49:4
**account** [3] - 5:23, 42:17, 49:2
**accurate** [1] - 52:3
**achieve** [2] - 40:6, 40:7
**Act** [3] - 27:3, 38:8, 45:15
**act** [1] - 8:25
**add** [2] - 40:8, 40:10
**added** [1] - 44:16
**addition** [1] - 10:2
**additional** [2] - 44:15, 48:9
**address** [1] - 42:23
**addresses** [1] - 33:14
**adjustments** [1] - 34:9
**administer** [1] - 4:23
**administered** [2] - 3:21, 3:23
**advanced** [1] - 40:9
**advice** [2] - 26:14, 28:18
**advised** [3] - 28:25, 38:14, 38:17
**advising** [1] - 37:23
**advisory** [1] - 10:14
**affect** [1] - 31:8
**affected** [1] - 28:13
**affirmance** [1] - 50:24
**affirming** [1] - 49:5
**aged** [2] - 32:25, 33:8
**agree** [9] - 22:22, 22:23, 23:2, 23:7, 23:9, 28:5, 28:7, 40:10, 48:6
**agreeable** [1] - 49:6
**agreed** [6] - 10:20, 10:21, 11:6, 20:19, 22:4, 45:5
**agreeing** [2] - 47:9, 48:15
**agreement** [62] - 2:9, 2:10, 2:11, 2:13, 2:15, 2:22, 2:23, 3:2, 3:7, 3:8, 5:8, 5:11, 7:17, 7:25, 8:2, 8:17, 9:7, 9:12, 10:4, 10:19, 10:20, 10:23, 10:24, 11:1, 11:16, 11:24, 19:14, 19:18, 20:10, 20:15, 20:17, 20:22, 20:25, 22:21, 24:13, 24:24, 25:1, 25:24, 27:10, 27:17, 27:19, 27:25, 29:1, 29:19, 31:5, 31:13, 31:20, 31:24, 32:15, 32:18, 33:17, 35:16, 37:4, 37:5, 38:12, 39:7, 40:4, 47:17, 47:19, 47:23, 48:23
**Agreement** [1] - 27:4
**Agreements** [1] - 11:2
**agreements** [6] - 11:3, 11:4, 11:17, 11:19, 11:20, 27:24
**agrees** [3] - 21:7, 21:13, 21:17
**ahead** [6] - 11:20, 12:3, 17:17, 24:3, 32:6, 41:11
**alcohol** [1] - 6:25
**allude** [1] - 38:19
**alluded** [1] - 29:22
**amended** [1] - 27:21
**AMERICA** [2] - 1:3, 1:13
**America** [1] - 2:5
**AND** [1] - 1:8
**anger** [1] - 43:12
**answer** [3] - 17:2, 20:11, 28:22
**anxious** [1] - 6:19
**anyway** [2] - 15:10, 15:23
**apart** [3] - 29:5, 31:12, 31:19
**apologize** [1] - 42:25
**apology** [1] - 43:22
**appeal** [13] - 25:25, 26:2, 26:6, 26:12, 26:20, 26:22, 27:5, 49:15, 49:16, 49:17, 49:18, 49:19, 49:22
**Appeals** [1] - 26:16
**appear** [2] - 31:7, 37:25
**appearance** [1] - 40:12
**applied** [1] - 26:17
**apply** [2] - 10:9, 33:16
**appreciate** [7] - 39:22, 41:6, 43:21, 43:22, 43:25, 44:6, 44:23
**appropriate** [5] - 11:9, 18:25, 32:13, 37:11, 41:21
**appropriately** [1] - 28:24
**appropriateness** [1] - 39:11
**argue** [2] - 26:11, 26:13
**argument** [1] - 15:24
**arguments** [1] - 27:3
**articulate** [1] - 37:10
**assessment** [5] - 9:25, 36:23, 39:10, 50:13, 50:14
**assigned** [1] - 16:24
**assistance** [1] - 29:23
**assume** [1] - 38:9
**assuming** [2] - 3:5, 17:15
**assumption** [1] - 19:13
**attempt** [1] - 44:11
**attention** [2] - 30:1, 48:11
**attitude** [2] - 14:17, 14:18
**attorney** [8] - 4:18, 25:13, 28:18, 36:16, 37:22, 49:16, 49:20
**AUSA** [1] - 1:12
**authority** [1] - 16:15
**authorized** [2] - 22:3, 22:21
**automatically** [1] - 13:24
**avoid** [1] - 13:18
**aware** [3] - 38:2, 40:4, 42:15

## B

**BAAN** [2] - 1:19, 52:9
**BAAN-PROULX** [2] - 1:19, 52:9
**background** [2] - 4:2, 17:11
**backgrounds** [1] - 42:2
**bad** [3] - 43:4, 44:21
**balance** [3] - 6:21, 39:14, 48:12
**balanced** [1] - 39:15
**balancing** [1] - 19:23
**BARBADORO** [1] - 1:9
**Bartlett** [1] - 39:2
**base** [2] - 33:15, 34:8
**based** [10] - 2:16, 2:18, 3:5, 3:11, 12:12, 23:3, 24:4, 32:15, 32:21, 36:22
**basing** [1] - 38:25
**basis** [2] - 34:6, 34:12
**bear** [4] - 14:10, 16:10, 24:16, 31:14
**BEFORE** [1] - 1:9
**begin** [1] - 2:7

**beginning** [1] - 27:20
**begins** [1] - 11:2
**behalf** [5] - 21:11, 21:20, 23:1, 39:25, 49:17
**behavior** [2] - 42:15, 46:13
**behind** [1] - 41:3
**belabor** [1] - 41:19
**below** [1] - 10:16
**Bendzunas** [4] - 17:6, 17:16, 17:25, 18:5
**beneficial** [1] - 6:22
**benefit** [3] - 32:7, 33:18, 44:7
**Berlin** [4] - 13:4, 13:11, 14:3, 15:5
**best** [1] - 43:8
**beta** [1] - 6:3
**better** [2] - 44:10
**between** [3] - 2:24, 12:17, 46:20
**beyond** [5] - 7:10, 7:23, 25:9, 46:22, 46:23
**big** [1] - 36:13
**biggest** [1] - 17:13
**binding** [5] - 2:11, 11:4, 11:17, 20:10, 20:13
**binds** [1] - 10:24
**bit** [2] - 6:19, 47:9
**blocker** [1] - 6:3
**Board** [1] - 39:3
**bound** [2] - 10:22, 36:1
**break** [7] - 34:25, 35:4, 45:8, 49:23, 49:25, 50:19, 51:7
**brief** [3] - 9:8, 36:11, 51:9
**bright** [1] - 30:8
**bring** [4] - 13:10, 13:11, 44:7, 47:16
**broad** [1] - 28:17
**brought** [3] - 13:20, 25:14, 31:14
**buckley** [1] - 16:24
**Buckley** [3] - 18:16, 23:12, 24:3
**burdensome** [2] - 16:5, 18:11
**BY** [1] - 1:19

## C

**calculation** [2] - 17:22, 32:11
**capable** [3] - 30:8, 42:10, 44:18
**Cardipres** [1] - 6:4
**case** [36] - 2:13, 5:23, 7:8, 7:17, 9:21, 10:9, 11:9, 12:16, 13:24, 16:25, 17:6, 17:11, 18:19, 19:7, 19:16, 19:19, 19:25, 27:2, 32:2, 32:12, 36:3, 36:15, 37:21, 39:17, 39:21, 39:22, 41:3, 41:8, 41:9, 44:4, 45:24, 48:1, 48:10, 48:11, 48:18, 50:10
**CASE** [1] - 1:2
**cases** [1] - 19:18
**categorically** [1] - 43:5
**category** [7] - 33:1, 33:5, 33:10, 34:8, 35:14, 35:23, 46:16
**caused** [1] - 8:6
**causes** [1] - 3:1
**causing** [1] - 6:12
**certain** [7] - 7:15, 7:22, 12:11, 23:19, 25:5, 28:9, 28:14
**certify** [1] - 52:3
**challenge** [5] - 25:25, 26:2, 26:25, 27:1, 35:21
**challenges** [6] - 40:16, 40:25, 41:24, 42:3, 42:6
**chance** [7] - 4:17, 4:20, 5:14, 12:19, 20:15, 30:14, 40:1
**CHANGE** [1] - 1:8
**change** [4] - 2:4, 3:1, 3:10, 30:14
**changes** [2] - 2:24, 3:10
**characteristics** [4] - 19:8, 33:16, 40:24, 41:1
**charge** [14] - 2:21, 3:14, 5:8, 5:9, 5:25, 7:22, 9:10, 9:14, 9:15, 23:3, 27:9, 30:25, 31:10, 31:17
**charged** [1] - 8:8
**charges** [3] - 7:19, 28:4, 33:3
**charging** [1] - 30:22
**Charles** [1] - 2:6
**CHARLES** [3] - 1:5, 1:15, 5:1
**check** [2] - 18:3, 18:16
**chief** [2] - 12:10, 17:5
**children** [1] - 46:11
**chooses** [1] - 24:18
**chose** [1] - 25:17
**Circuit** [1] - 26:16
**circumstances** [5] - 8:21, 8:23, 19:2, 37:15, 41:5
**citation** [1] - 47:22
**citizen** [1] - 28:11
**class** [1] - 43:12
**clear** [1] - 4:1
**clerk** [1] - 5:2
**CLERK** [4] - 2:3, 24:10, 50:11, 50:18
**clerk's** [1] - 49:21
**clerks** [1] - 18:4
**client** [1] - 29:6
**client's** [1] - 39:25
**CLOHERTY** [16] - 1:14, 3:16, 16:11, 19:5, 24:2, 28:7, 29:9, 29:21, 34:2, 34:21, 35:25, 36:5, 40:2, 45:11, 49:12, 50:6
**Cloherty** [12] - 1:15, 28:5, 28:19, 28:24, 29:4, 32:12, 32:18, 33:25, 34:20, 35:21, 39:24, 49:11
**close** [2] - 2:14, 29:12
**closure** [2] - 44:7, 47:16
**coercion** [2] - 31:13, 31:18
**collateral** [9] - 26:1, 26:6, 26:13, 26:21, 26:23, 27:5, 28:10, 28:12
**collateral-review** [1] - 26:13
**college** [1] - 4:8
**colloquy** [1] - 24:12
**comfortable** [1] - 17:3
**coming** [2] - 30:12, 38:16
**comment** [2] - 39:5, 44:6
**comments** [2] - 39:22, 44:23
**commit** [1] - 8:24
**communicate** [1] - 30:24
**communication** [2] - 8:7, 8:15
**communications** [1] - 33:14
**competence** [1] - 42:8
**competency** [6] - 5:22, 5:24, 29:11, 29:13, 29:18, 42:12
**competent** [4] - 26:11, 30:4, 30:6, 31:9
**competing** [1] - 39:16
**complete** [3] - 31:10, 32:2, 45:6
**completed** [2] - 15:21, 49:25
**COMPLETED** [1] - 52:9
**completely** [1] - 38:7
**completion** [1] - 46:21
**concept** [1] - 8:18
**concern** [4] - 16:10, 17:13, 18:1, 47:13
**concerned** [1] - 29:18
**concerns** [7] - 3:3, 19:23, 30:1, 39:13, 39:16, 48:11, 49:3
**concluded** [1] - 19:17
**conclusion** [1] - 24:15
**CONCORD** [1] - 1:1
**Concord** [3] - 1:21, 14:3, 15:5
**concurrence** [1] - 45:9
**concurrent** [3] - 11:8, 11:10, 47:7
**concurrently** [1] - 45:18
**concurs** [1] - 32:13
**condition** [3] - 11:14, 34:22, 45:21
**conditional** [1] - 45:7
**conditions** [14] - 17:7, 17:16, 18:2, 18:6, 24:8, 34:22, 35:1, 35:11, 45:6, 45:8, 45:10, 49:7, 49:24, 50:25
**conduct** [2] - 9:8, 46:9
**confer** [1] - 17:22
**conferred** [2] - 31:4, 36:16
**confident** [1] - 48:19
**confinement** [1] - 12:22
**consciously** [1] - 8:14
**consecutive** [3] - 19:19, 44:15, 47:6
**consecutively** [1] - 47:10
**consent** [1] - 18:20
**consequences** [4] - 28:12, 31:11, 31:17, 48:8
**consider** [3] - 41:17, 41:20, 47:4
**consideration** [1] - 2:4
**considerations** [1] - 39:6
**considering** [4] - 19:24, 37:15, 40:23, 48:15
**consist** [1] - 25:8
**consistent** [4] - 34:3, 38:23, 40:14, 42:12
**constitutional** [1] - 25:5
**constitutionally** [1] - 26:14
**constitutionally-ineffective** [1] - 26:14
**consult** [1] - 49:16
**consulted** [1] - 38:15
**contact** [7] - 11:14, 36:20, 39:17, 44:8, 44:11, 45:22, 48:4
**contacting** [1] - 21:23
**contain** [1] - 47:17
**contained** [1] - 27:10
**containing** [1] - 8:8
**contains** [2] - 9:8, 47:24
**context** [1] - 9:1
**continue** [2] - 43:18, 46:21
**contrary** [1] - 45:3
**controlling** [1] - 39:19
**conversation** [1] - 39:1
**conversations** [1] - 40:13
**convey** [3] - 9:1, 36:11, 38:2
**conveying** [1] - 38:3
**convicted** [1] - 33:3
**conviction** [6] - 25:25, 26:2, 33:13, 36:19, 37:18, 48:19
**convictions** [1] - 32:25
**copies** [1] - 35:9

**copy** [1] - 17:7
**corpus** [1] - 26:3
**correct** [6] - 22:17, 23:25, 33:6, 38:10, 38:14, 39:8
**corrections** [1] - 16:20
**Corrections** [1] - 12:23
**correspond** [1] - 33:9
**correspondence** [1] - 32:19
**cost** [2] - 25:13, 25:15
**counsel** [6] - 3:4, 24:5, 31:3, 31:4, 38:15, 50:19
**Count** [1] - 31:21
**count** [5] - 3:18, 7:18, 7:19, 30:22, 33:13
**countable** [1] - 32:25
**county** [3] - 16:19, 16:20, 28:2
**County** [2] - 12:23, 13:21
**couple** [6] - 4:15, 6:11, 16:4, 17:23, 26:9, 38:6
**course** [3] - 19:9, 40:2, 40:10
**courses** [1] - 4:9
**court** [8] - 2:2, 13:9, 13:12, 14:2, 15:3, 15:6, 15:16, 25:14
**COURT** [113] - 1:1, 1:10, 2:7, 3:17, 3:20, 4:1, 4:10, 4:13, 4:15, 4:22, 5:5, 5:11, 5:14, 5:17, 5:19, 6:7, 6:16, 6:21, 6:24, 7:2, 7:5, 7:8, 7:13, 9:7, 9:14, 9:17, 10:8, 10:11, 10:19, 12:7, 13:15, 14:6, 14:15, 14:21, 14:24, 15:2, 15:9, 15:18, 15:21, 16:9, 16:12, 16:21, 17:2, 17:25, 18:9, 19:4, 19:12, 20:5, 20:9, 20:21, 20:24, 21:16, 22:9, 22:14, 22:18, 23:5, 23:11, 23:18, 24:1, 24:3, 24:9, 24:11, 24:22, 25:4, 25:12, 25:23, 26:9, 26:25, 27:8, 27:12, 27:15, 27:22, 28:5, 28:8, 28:16, 29:4, 29:10, 30:3, 30:18, 30:20, 31:2, 32:6, 32:10, 32:23, 33:11, 33:22, 33:25, 34:3, 34:16, 34:24, 35:8, 35:18, 36:1, 36:6, 37:19, 38:6, 38:11, 38:18, 39:4, 39:9, 39:24, 41:23, 43:15, 43:21, 45:2, 45:12, 47:23, 49:11, 49:13, 50:4, 50:7, 50:14, 50:19
**Court** [30] - 1:20, 1:20, 2:3, 2:9, 10:3, 21:7, 21:8, 21:13, 21:17, 22:2, 22:23, 23:15, 26:15, 26:16, 31:4, 31:6, 31:15, 38:2, 38:12, 39:13, 40:4, 40:21, 40:23, 41:17, 41:20, 42:24, 45:15, 45:23, 51:2
**Court's** [2] - 19:3, 29:25
**courtroom** [3] - 5:2, 36:17, 43:1
**COURTROOM** [3] - 2:3, 50:11, 50:18
**cover** [3] - 50:1, 50:4, 50:17
**covered** [2] - 50:5, 50:16
**credible** [1] - 36:24
**criminal** [19] - 2:5, 17:8, 32:20, 32:21, 32:22, 32:23, 33:1, 33:5, 33:8, 33:19, 34:8, 35:14, 35:23, 37:18, 46:9, 46:13, 46:15, 46:16, 46:25
**critical** [1] - 39:9
**cross** [1] - 25:20
**cross-examine** [1] - 25:20
**crush** [1] - 6:13
**crushing** [1] - 6:12
**current** [2] - 2:21, 3:6
**custody** [3] - 12:15, 13:6, 13:14

## D

**danger** [1] - 46:19
**DANIEL** [1] - 1:14
**date** [3] - 13:9, 15:3, 17:9
**DATE** [1] - 52:9
**days** [8] - 6:12, 6:14, 12:24, 13:5, 14:1, 16:3, 49:18, 49:22
**deal** [4] - 30:13, 46:17, 49:23, 49:24
**dealing** [2] - 38:8, 43:25
**decades** [1] - 41:14
**decide** [2] - 10:23, 11:21
**decision** [6] - 18:15, 21:1, 29:1, 30:15, 30:16, 39:6
**decisions** [1] - 30:9
**decompensate** [1] - 16:8
**defendant** [27] - 1:6, 2:7, 19:9, 21:7, 21:13, 21:17, 21:22, 21:24, 22:3, 27:16, 27:23, 27:24, 30:23, 31:2, 31:3, 31:6, 31:9, 31:14, 31:21, 33:17, 34:4, 36:9, 40:24, 45:16, 46:2
**DEFENDANT** [64] - 1:14, 3:19, 3:25, 4:8, 4:12, 4:14, 4:21, 5:4, 5:10, 5:13, 5:16, 5:18, 6:3, 6:10, 6:18, 6:23, 7:1, 7:4, 7:7, 7:12, 9:6, 9:13, 9:16, 10:7, 10:10, 10:18, 12:5, 12:18, 14:1, 14:12, 14:16, 14:23, 15:1, 15:4, 15:14, 15:20, 16:7, 16:13, 18:8, 20:4, 20:8, 20:20, 20:23, 23:3, 23:10, 24:21, 25:3, 25:11, 25:22, 26:8, 26:24, 27:7, 27:11, 27:14, 28:15, 29:3, 30:17, 30:19, 31:1, 32:5, 32:9, 42:23, 43:16, 44:24
**defendant's** [8] - 17:8, 18:24, 23:23, 24:16, 31:15, 34:8, 35:12, 35:22
**defendants** [1] - 42:1
**defense** [1] - 29:25
**defer** [6] - 19:3, 19:15, 19:24, 24:13, 39:15, 50:20
**definitely** [3] - 30:4, 30:5, 44:10
**delivery** [1] - 8:7
**Depakote** [1] - 6:6
**Department** [1] - 1:13
**deported** [1] - 28:11
**deposited** [2] - 8:6
**described** [2] - 8:3, 20:14
**description** [1] - 9:8
**designed** [1] - 40:6
**despite** [1] - 30:7
**detailed** [1] - 17:9
**Detainers** [1] - 27:4
**determination** [3] - 23:23, 32:14, 33:1
**determinations** [1] - 34:10
**determine** [3] - 10:12, 10:13, 11:19
**determined** [2] - 31:6, 35:12
**determines** [2] - 31:15, 45:23
**deterrence** [3] - 47:5, 47:6, 48:13
**deviate** [1] - 19:22
**diagnosis** [1] - 42:12
**diagnostic** [1] - 15:7
**difference** [1] - 28:2
**different** [1] - 10:4
**differently** [1] - 15:24
**difficult** [9] - 38:3, 40:5, 40:18, 41:3, 41:5, 41:7, 41:9, 42:3, 46:4
**difficulties** [1] - 4:10
**difficulty** [4] - 4:13, 5:6, 30:5, 41:6
**diminish** [1] - 42:4
**direct** [3] - 47:19, 49:16, 51:3
**directly** [1] - 21:22
**director** [1] - 39:3
**disagree** [1] - 33:25
**disciplinary** [2] - 13:1, 13:2
**discuss** [5] - 10:25, 20:22, 23:15, 23:16, 25:1
**discussed** [2] - 10:8, 37:21
**discussions** [2] - 27:21, 32:19
**disease** [1] - 6:4
**dismiss** [1] - 27:2
**disposition** [3] - 11:9, 19:25, 38:12
**disregarded** [1] - 8:14
**DISTRICT** [2] - 1:1, 1:10
**District** [1] - 1:20
**docket** [1] - 14:5
**documents** [3] - 4:15, 5:15, 29:13
**done** [8] - 12:11, 12:25, 15:11, 16:4, 18:13, 24:20, 37:24, 39:14
**doubt** [7] - 7:11, 7:24, 25:10, 41:1, 42:7, 45:2, 50:7
**doubted** [1] - 30:6
**doubts** [1] - 30:10
**down** [4] - 13:11, 14:4, 26:16, 46:18
**downs** [1] - 40:13
**drug** [1] - 31:7
**duly** [1] - 5:2

## E

**e-mailed** [1] - 18:5
**effect** [1] - 22:15
**effort** [3] - 27:9, 27:12, 43:25
**efforts** [1] - 43:24
**either** [1] - 23:15
**elements** [5] - 7:16, 7:22, 7:25, 8:3, 8:4
**embodied** [2] - 27:16, 27:25
**emerges** [1] - 2:25
**emotional** [1] - 43:22
**end** [3] - 18:15, 30:12, 44:17
**enforce** [2] - 3:7, 31:23
**enjoy** [1] - 37:1
**enter** [2] - 2:20, 29:19
**entered** [4] - 2:10, 10:19, 11:3, 26:12
**enters** [1] - 3:6
**entire** [2] - 12:22, 43:20
**entitled** [1] - 52:4
**entry** [2] - 21:25, 47:25
**especially** [1] - 37:15
**ESQ** [1] - 1:14
**essence** [1] - 50:25
**evaluate** [1] - 29:19
**evaluating** [1] - 5:25
**evaluations** [2] - 5:22, 5:24
**eve** [1] - 48:18
**evidence** [7] - 9:9, 21:8, 21:18, 22:24, 29:7, 36:23, 45:3
**evolved** [1] - 27:19

**exactly** [1] - 23:5
**examine** [1] - 25:20
**exceptions** [5] - 26:4, 26:5, 26:9, 26:10, 26:22
**exchange** [1] - 40:21
**excuse** [5] - 5:8, 21:3, 42:4, 42:15, 50:11
**executive** [1] - 43:19
**exercise** [1] - 12:3
**exerted** [1] - 31:18
**existed** [3] - 21:10, 21:19, 22:25
**expect** [2] - 23:21, 24:20
**expedited** [1] - 12:9
**experience** [3] - 15:25, 37:2, 38:4
**experienced** [1] - 41:7
**expert** [2] - 29:23, 42:12
**explain** [9] - 3:24, 8:18, 10:5, 11:5, 12:8, 20:2, 21:6, 24:18, 46:3
**explained** [2] - 20:10, 24:24
**explore** [1] - 13:15
**exposure** [1] - 37:18
**expressed** [3] - 3:4, 28:19, 42:7
**expression** [1] - 8:24
**extensive** [2] - 29:12, 32:23
**extent** [2] - 13:16, 48:22
**extra** [1] - 13:17
**extraordinarily** [2] - 46:9, 46:13
**extraordinary** [1] - 42:1

## F

**faced** [1] - 42:6
**fact** [5] - 9:15, 22:10, 29:13, 47:23, 48:16
**factor** [2] - 36:13, 40:23
**factors** [8] - 19:23, 37:14, 38:18, 39:12, 40:22, 41:18, 41:19, 49:1
**failed** [1] - 43:14
**fair** [2] - 40:5, 47:5
**familiar** [4] - 5:22, 6:2, 8:22, 34:21
**family** [1] - 21:24
**far** [1] - 4:7
**fashioning** [2] - 40:23, 41:17
**favorable** [2] - 27:24, 28:1
**FCRR** [2] - 1:19, 52:9
**February** [2] - 1:4, 27:20
**federal** [3] - 13:6, 13:13, 15:3
**few** [3] - 34:14, 44:13, 50:22
**figure** [1] - 43:18
**file** [3] - 49:17, 49:20, 51:3
**filed** [4] - 2:9, 29:5, 49:18, 49:21
**final** [2] - 18:15, 34:14
**finality** [1] - 37:4
**findings** [8] - 23:14, 23:19, 24:6, 24:12, 24:16, 32:14, 34:7, 35:22
**fine** [7] - 9:22, 11:17, 34:16, 34:17, 45:23, 50:11, 50:15
**finish** [1] - 24:12
**fire** [1] - 28:20
**firearms** [1] - 28:12
**First** [1] - 26:15
**first** [11] - 4:19, 8:5, 11:6, 13:14, 27:19, 31:25, 40:11, 42:25, 43:11, 48:17
**five** [2] - 9:21, 44:25
**follow** [4] - 7:2, 9:2, 38:6, 48:8
**following** [3] - 2:2, 7:5, 45:16
**follows** [1] - 5:3
**FOR** [2] - 1:12, 1:14
**foregoing** [1] - 52:3
**forgot** [1] - 4:22
**form** [2] - 15:8, 15:11
**formal** [2] - 7:14, 27:15
**formally** [2] - 2:23, 3:9
**forth** [5] - 15:6, 22:15, 31:12, 31:20, 35:16
**forward** [7] - 2:17, 17:14, 17:24, 20:2, 20:14, 20:17, 41:13
**fourth** [1] - 8:13
**frank** [1] - 17:19
**front** [1] - 25:7
**frustrating** [1] - 44:3
**frustration** [1] - 28:19
**fucked** [1] - 43:14
**fulfilled** [1] - 38:7
**full** [6] - 17:11, 17:15, 18:22, 31:10, 31:16, 32:1
**fully** [2] - 13:19, 44:1
**function** [1] - 43:19
**future** [3] - 40:18, 41:14, 48:5

## G

**GED** [1] - 4:8
**general** [4] - 26:6, 26:22, 47:5, 48:13
**generally** [1] - 34:21
**given** [2] - 16:16, 24:5
**GIZELLA** [2] - 1:19, 52:9
**Glenn** [37] - 2:6, 2:19, 3:5, 3:13, 13:16, 18:7, 18:21, 20:5, 22:19, 24:17, 29:12, 29:14, 29:22, 29:24, 30:4, 30:7, 30:13, 32:1, 32:14, 33:7, 35:1, 38:20, 40:12, 41:7, 41:25, 42:2, 42:13, 42:19, 45:8, 46:5, 46:15, 47:24, 48:9, 48:22, 49:5, 49:15, 50:8
**GLENN** [3] - 1:5, 1:15, 5:1
**Glenn's** [5] - 17:10, 29:11, 29:18, 32:21, 37:16
**government** [20] - 7:10, 7:15, 7:23, 9:9, 14:8, 18:18, 18:23, 21:3, 23:21, 27:15, 32:10, 35:9, 36:4, 36:25, 39:10, 40:5, 40:9, 48:16, 48:18, 49:9
**government's** [5] - 19:25, 29:7, 35:15, 36:14, 40:3
**great** [1] - 12:19
**GREEN** [26] - 1:12, 19:2, 21:15, 22:7, 22:11, 22:17, 23:25, 27:18, 28:1, 32:17, 33:6, 33:12, 33:24, 35:7, 35:17, 36:4, 36:10, 37:20, 38:10, 38:14, 38:25, 39:8, 39:23, 47:21, 49:10, 50:3
**green** [7] - 21:14, 22:1, 34:1, 35:16, 36:3, 36:8, 47:18
**Greg** [1] - 16:15
**growing** [1] - 42:6
**guess** [2] - 6:13, 40:11
**guideline** [12] - 10:13, 17:22, 23:14, 23:19, 23:23, 32:11, 32:13, 33:20, 33:23, 35:13, 35:19, 35:22
**guidelines** [6] - 10:9, 10:12, 10:14, 26:20, 32:20
**guilty** [50] - 2:8, 2:21, 3:6, 3:14, 3:18, 4:4, 5:25, 7:10, 7:18, 7:24, 9:4, 9:14, 9:15, 12:1, 12:19, 13:1, 20:16, 21:2, 23:3, 24:15, 25:4, 25:9, 25:23, 26:7, 26:12, 27:1, 27:9, 27:13, 28:3, 28:9, 28:13, 29:1, 29:6, 29:20, 30:12, 30:15, 30:18, 30:19, 30:20, 30:25, 31:1, 31:3, 31:5, 31:15, 31:21

## H

**habeas** [1] - 26:3
**HAMPSHIRE** [1] - 1:1
**Hampshire** [1] - 39:3
**hand** [2] - 3:22, 4:24
**happy** [2] - 21:15, 42:21
**harassing** [2] - 21:23, 33:14
**harassment** [3] - 21:9, 21:19, 22:25
**hard** [2] - 3:4, 39:12
**health** [15] - 5:20, 5:21, 17:10, 29:14, 29:15, 30:5, 30:7, 42:9, 42:11, 43:9, 43:17, 46:6, 46:17, 46:22
**hear** [3] - 14:6, 42:22, 50:13
**heard** [3] - 37:8, 37:23, 37:24
**hearing** [6] - 8:22, 16:6, 21:24, 22:4, 23:7, 47:25
**HEARING** [1] - 1:8
**heart** [2] - 6:4
**heavily** [2] - 39:21, 47:2
**held** [2] - 2:2, 44:2
**help** [5] - 6:18, 41:3, 41:4, 49:21
**helped** [1] - 29:24
**helpful** [3] - 14:19, 23:11, 29:25
**hereby** [1] - 52:3
**higher** [4] - 26:19, 47:9, 48:14, 49:3
**history** [16] - 5:20, 17:10, 19:8, 32:21, 32:22, 33:1, 33:5, 33:8, 33:20, 34:8, 35:14, 35:23, 40:24, 40:25, 46:16
**hold** [3] - 25:18, 42:20, 44:5
**honest** [1] - 28:22
**Honor** [53] - 7:7, 16:11, 18:8, 19:3, 19:5, 20:4, 20:8, 20:20, 20:23, 21:15, 23:4, 23:10, 24:2, 24:21, 25:3, 25:11, 25:22, 26:8, 26:24, 27:7, 27:11, 27:14, 27:18, 28:7, 28:15, 29:3, 29:9, 29:21, 30:17, 31:1, 32:5, 32:9, 32:17, 33:6, 33:24, 34:2, 35:17, 35:25, 36:5, 36:12, 37:6, 37:9, 37:21, 38:5, 39:23, 40:2, 41:21, 45:11, 49:12, 50:3, 50:6, 50:18
**HONORABLE** [1] - 1:9
**hope** [1] - 13:19
**hopeful** [1] - 41:12
**hopefully** [2] - 43:17, 46:20
**hoping** [1] - 14:14
**hour** [1] - 48:22
**House** [1] - 12:23
**house** [5] - 13:5, 14:2, 14:3, 15:5, 15:7
**housed** [4] - 13:4, 13:12, 16:14, 16:18
**hyperbole** [1] - 8:25
**hypertension** [1] - 6:5

## I

**illegal** [1] - 6:24
**illegally** [1] - 29:7
**illegally-obtained** [1] - 29:7

**illness** [4] - 16:7, 42:10, 42:13, 46:8
**immediately** [1] - 24:14
**importance** [1] - 47:4
**important** [12] - 4:16, 21:1, 22:21, 28:23, 30:9, 36:18, 39:6, 44:9, 44:22, 48:1, 48:5, 48:10
**impose** [9] - 11:21, 24:19, 29:2, 35:4, 36:6, 45:5, 49:2, 49:4, 49:13
**imposed** [7] - 11:9, 45:19, 45:21, 45:24, 47:10, 48:25, 50:15
**imposes** [1] - 45:16
**imposing** [3] - 34:16, 50:15, 50:16
**imprisonment** [3] - 9:21, 11:7, 45:17
**incarcerated** [1] - 33:7
**incarceration** [1] - 37:16
**inclined** [1] - 49:2
**include** [2] - 23:19, 26:3
**includes** [2] - 11:13, 45:21
**inclusion** [1] - 34:12
**independent** [1] - 39:10
**indicated** [1] - 2:8
**indictment** [7] - 3:18, 4:19, 5:9, 7:19, 11:15, 30:22, 31:22
**indirectly** [1] - 21:23
**individual** [3] - 40:15, 41:11, 47:5
**ineffective** [1] - 26:14
**influence** [2] - 6:25, 31:7
**influences** [1] - 38:18
**information** [2] - 5:24, 23:17
**informed** [3] - 19:8, 31:4, 48:16
**ing** [1] - 14:18
**injure** [2] - 8:10, 8:15
**injurious** [1] - 47:13
**innocence** [1] - 7:9
**instead** [2] - 25:16, 48:19
**instructions** [1] - 7:5
**intelligent** [1] - 29:20
**intelligently** [3] - 2:20, 31:16, 50:9
**intend** [4] - 3:13, 3:17, 20:18, 22:2
**intending** [3] - 3:12, 21:14, 48:7
**intends** [1] - 2:8
**intention** [8] - 2:12, 2:21, 3:6, 18:12, 20:18, 22:8, 32:3, 39:13
**interactions** [3] - 29:12, 29:15, 39:18
**interest** [3] - 44:17, 44:18, 44:20
**interested** [1] - 28:21
**interests** [1] - 48:12
**interfere** [1] - 6:17
**interrupt** [1] - 3:24
**Interstate** [1] - 27:3
**interstate** [2] - 7:19, 30:24
**introduce** [1] - 9:9
**investigation** [4] - 12:23, 12:24, 17:12, 32:8
**invoke** [1] - 26:18
**involved** [1] - 41:4
**issuance** [3] - 21:10, 21:20, 23:1
**issue** [7] - 13:17, 22:2, 22:5, 22:10, 29:6, 43:11, 49:23
**issued** [2] - 27:2, 51:5
**issues** [9] - 12:11, 14:5, 27:5, 29:10, 42:11, 42:13, 46:7, 46:18, 46:22
**iteration** [1] - 28:3
**itself** [2] - 8:2, 8:17

## J

**J&C** [5] - 23:14, 23:17, 24:6, 34:10, 34:13
**jail** [1] - 16:19
**Jay** [1] - 39:1
**Jen** [1] - 23:16
**joint** [1] - 32:15
**jokes** [1] - 8:25
**JOSEPH** [1] - 1:14
**Judge** [1] - 35:7
**JUDGE** [1] - 1:10
**judge** [2] - 19:7, 50:11
**judgment** [8] - 19:3, 23:18, 30:3, 31:8, 33:4, 46:3, 46:4, 47:2
**jury** [3] - 25:8, 25:18
**Justice** [1] - 1:13

## K

**kid** [1] - 16:16
**kill** [1] - 46:11
**kind** [2] - 26:1, 26:12
**knowing** [2] - 28:21, 29:19
**knowingly** [4] - 2:19, 8:6, 31:16, 50:8
**knowledge** [2] - 29:6, 31:17

## L

**largely** [1] - 42:11
**larger** [1] - 41:16
**last** [8] - 2:18, 6:12, 6:14, 14:2, 14:18, 19:10, 19:16, 30:14
**law** [5] - 10:2, 22:21, 26:16, 26:18, 43:5
**LAW** [1] - 24:10
**lawyer** [10] - 5:15, 10:8, 12:8, 12:9, 12:14, 14:7, 25:20, 26:13, 50:21, 50:23
**lawyers** [2] - 29:16, 30:6
**leave** [1] - 41:22
**left** [1] - 24:23
**legal** [1] - 28:18
**letter** [2] - 37:25
**level** [6] - 33:15, 34:9, 35:13, 35:24, 46:10
**life** [5] - 40:16, 41:15, 41:25, 42:3, 43:20
**limited** [6] - 10:24, 11:5, 11:18, 20:13, 26:4, 49:15
**lines** [1] - 30:1
**list** [1] - 24:8
**litigating** [1] - 41:8
**LLP** [1] - 1:15
**look** [3] - 8:2, 41:18, 51:4
**looked** [1] - 33:1
**looking** [3] - 37:3, 37:17, 47:22
**lose** [2] - 49:18, 49:22
**lost** [2] - 38:5, 41:10

## M

**Mackey** [1] - 39:1
**mail** [1] - 8:7
**mailed** [1] - 18:5
**mails** [2] - 7:20, 30:24
**Malone** [8] - 36:15, 38:9, 43:3, 44:7, 44:20, 44:25, 45:1, 48:4
**management** [1] - 43:12
**mandatory** [1] - 9:25
**manner** [1] - 31:8
**marshal** [1] - 50:20
**marshals** [1] - 16:15
**Matt** [1] - 24:9
**matter** [4] - 2:5, 41:22, 44:8, 52:5
**matters** [1] - 32:16
**maximum** [5] - 9:17, 9:20, 9:22, 10:6, 47:8
**mean** [7] - 16:7, 16:14, 16:22, 22:1, 42:1, 42:8, 43:22
**meaningful** [1] - 29:24
**means** [2] - 10:14, 36:15
**medication** [2] - 6:5, 31:7
**medications** [5] - 6:1, 6:7, 6:16, 7:2, 7:6
**meet** [2] - 50:21, 50:22
**meeting** [1] - 36:12
**mental** [19] - 5:19, 5:20, 5:21, 16:7, 17:10, 29:14, 29:15, 30:4, 30:7, 42:9, 42:10, 42:11, 42:13, 43:9, 43:17, 46:6, 46:7, 46:17, 46:22
**mentioned** [1] - 19:7
**merit** [1] - 40:19
**might** [7] - 15:18, 15:23, 15:24, 26:18, 29:2, 48:24
**mind** [4] - 3:10, 30:14, 43:7, 48:14
**mine** [1] - 37:11
**minimum** [2] - 17:8, 38:22
**minute** [4] - 10:5, 26:5, 30:13, 34:25
**minutes** [3] - 17:23, 34:15, 50:22
**modify** [1] - 51:5
**moment** [2] - 42:18, 46:2
**months** [8] - 10:13, 10:15, 11:7, 11:10, 16:5, 33:21, 40:11, 45:17
**more-detailed** [1] - 17:9
**morning** [1] - 38:16
**most** [7] - 10:22, 36:18, 37:6, 43:24, 44:9, 44:22, 46:10
**motion** [6] - 22:13, 29:4, 35:6, 36:2, 51:1, 51:3
**motions** [3] - 26:3, 27:2
**move** [4] - 24:14, 41:4, 50:21, 50:22
**moves** [1] - 41:13
**MR** [40] - 3:16, 16:11, 19:2, 19:5, 21:15, 22:7, 22:11, 22:17, 23:25, 24:2, 27:18, 28:1, 28:7, 29:9, 29:21, 32:17, 33:6, 33:12, 33:24, 34:2, 34:21, 35:7, 35:17, 35:25, 36:4, 36:5, 36:10, 37:20, 38:10, 38:14, 38:25, 39:8, 39:23, 40:2, 45:11, 47:21, 49:10, 49:12, 50:3, 50:6

## N

**named** [1] - 11:14
**nature** [2] - 8:10, 46:13
**necessarily** [2] - 15:14, 17:3
**necessary** [1] - 51:5
**need** [14] - 4:5, 12:11, 18:14, 20:11, 26:10, 27:22, 27:23, 28:22, 29:17, 30:10, 34:17, 50:1, 50:21
**needed** [2] - 46:12, 50:17
**negotiation** [1] - 40:5
**never** [2] - 30:6, 44:2
**NEW** [1] - 1:1
**new** [3] - 15:11, 26:16, 26:18

**New** [1] - 39:3
**NH** [1] - 1:21
**night** [1] - 2:18
**NO** [1] - 1:2
**non** [1] - 20:25
**non-standard** [1] - 20:25
**none** [2] - 27:4, 28:1
**normally** [3] - 6:20, 15:25, 43:2
**not-guilty** [2] - 12:1, 20:16
**note** [1] - 29:21
**notice** [2] - 49:17
**notify** [1] - 18:4
**notwithstanding** [1] - 46:5
**nullity** [1] - 48:23
**number** [3] - 32:24, 33:19, 37:24
**Number** [1] - 11:14
**numbers** [1] - 34:12

## O

**oath** [3] - 3:21, 3:22, 4:23
**object** [1] - 35:2
**objections** [3] - 49:8, 49:10, 49:11
**objective** [1] - 8:23
**obtain** [1] - 48:19
**obtained** [1] - 29:7
**obviously** [5] - 17:20, 19:5, 34:23, 39:17, 44:3
**occurred** [2] - 43:9, 43:23
**OF** [3] - 1:3, 1:8, 1:13
**offense** [9] - 7:16, 8:4, 9:8, 33:15, 34:9, 35:13, 35:24
**offer** [2] - 27:16, 48:17
**offered** [3] - 31:3, 31:5, 48:17
**offering** [1] - 48:20
**office** [5] - 17:14, 17:18, 17:22, 18:25, 49:21
**office's** [1] - 36:14
**officer** [4] - 12:10, 16:24, 17:5, 34:11
**Official** [1] - 1:20
**one** [21] - 3:18, 11:13, 12:8, 18:4, 20:24, 21:5, 27:16, 27:20, 27:25, 28:3, 38:18, 40:14, 40:22, 45:18, 45:20, 46:10, 46:22, 46:23, 47:9, 48:15, 51:4
**One** [10] - 11:14, 21:9, 21:11, 21:19, 21:21, 21:23, 22:25, 23:2, 34:23, 45:22
**open** [2] - 2:2, 14:5
**operations** [1] - 39:3
**opportunity** [5] - 12:1, 24:17, 24:18, 41:24, 42:19
**option** [1] - 16:22
**oral** [3] - 22:9, 35:5, 51:1
**orally** [1] - 51:2
**ordeal** [1] - 47:15
**order** [21] - 7:24, 9:4, 10:3, 21:11, 21:20, 21:22, 21:25, 22:3, 22:5, 22:10, 22:13, 22:14, 23:1, 27:2, 35:6, 44:15, 47:17, 47:25, 51:2, 51:3, 51:4
**Order** [1] - 21:4
**ordered** [1] - 45:24
**orders** [1] - 35:10
**ordinarily** [6] - 5:20, 19:21, 28:16, 47:2, 47:6, 48:14
**ordinary** [1] - 19:18
**otherwise** [7] - 18:13, 21:23, 23:8, 27:1, 48:25, 49:25, 50:16
**ought** [1] - 16:22
**outbursts** [2] - 42:25, 43:23
**overwhelmed** [2] - 43:1, 43:19
**own** [1] - 42:12

## P

**page** [4] - 8:3, 11:2, 47:19, 47:21
**pain** [1] - 6:14
**paragraph** [1] - 47:21
**Parole** [1] - 39:3
**part** [4] - 10:22, 39:16, 40:4, 43:24
**participate** [1] - 29:24
**particular** [2] - 38:11, 39:7
**particularly** [1] - 39:21
**particulars** [1] - 28:25
**parties** [4] - 23:16, 23:20, 23:22, 36:7
**past** [2] - 40:10, 41:4
**path** [1] - 40:17
**pathway** [1] - 41:11
**PAUL** [1] - 1:9
**pay** [4] - 9:25, 10:3, 43:20, 48:11
**peace** [1] - 43:7
**penalties** [3] - 9:18, 10:2, 10:6
**pending** [4] - 13:8, 13:9, 14:5, 15:3
**people** [4] - 15:25, 18:22, 25:8, 25:9
**performed** [1] - 5:23
**period** [5] - 15:12, 15:19, 16:2, 22:15, 48:21
**periodically** [1] - 41:2
**persistent** [1] - 6:4
**person** [7] - 8:10, 8:16, 8:22, 30:8, 42:10, 46:18, 46:25
**personal** [2] - 38:4, 42:5
**personally** [2] - 43:22, 44:5
**perspective** [1] - 27:22
**persuaded** [1] - 47:12
**physician** [1] - 7:3
**pick** [1] - 24:22
**piece** [2] - 41:16, 41:18
**place** [3] - 13:4, 13:14, 13:24
**places** [1] - 28:14
**plaintiff** [1] - 1:4
**PLAINTIFF** [1] - 1:12
**plan** [1] - 3:1
**plea** [82] - 2:4, 2:9, 2:10, 2:11, 2:12, 2:15, 2:21, 2:22, 2:23, 3:1, 3:6, 3:7, 3:11, 4:4, 5:8, 5:11, 7:17, 7:25, 8:2, 8:17, 9:7, 9:11, 10:4, 10:19, 10:20, 10:22, 10:24, 11:1, 11:24, 12:1, 12:2, 12:6, 14:13, 20:10, 20:15, 20:16, 20:17, 20:21, 20:24, 21:2, 22:21, 23:3, 24:12, 24:13, 24:15, 24:24, 25:1, 26:7, 26:12, 27:1, 27:10, 27:16, 27:24, 28:13, 28:25, 29:19, 29:20, 30:12, 30:20, 31:3, 31:5, 31:11, 31:13, 31:15, 31:18, 31:20, 31:23, 32:18, 33:17, 35:16, 38:12, 43:7, 47:16, 47:19, 47:23, 48:17, 50:2, 50:5
**PLEA** [1] - 1:8
**plead** [11] - 2:8, 3:14, 3:17, 5:25, 27:9, 27:13, 28:2, 29:1, 30:15, 30:18, 30:24
**pleading** [8] - 7:18, 9:14, 12:18, 25:4, 25:23, 28:3, 28:9, 29:6
**Pleasant** [1] - 1:21
**point** [3] - 2:17, 11:23, 41:9
**points** [3] - 33:9, 33:13, 33:20
**pop** [1] - 43:1
**population** [1] - 16:18
**pose** [1] - 47:1
**poses** [1] - 46:19
**position** [2] - 26:17, 40:3
**possess** [1] - 28:11
**possession** [1] - 29:8
**possibility** [2] - 9:2, 15:22
**possible** [4] - 9:20, 10:6, 12:15, 44:19
**post** [1] - 26:2
**post-appeal** [1] - 26:2
**postal** [1] - 8:7
**potential** [2] - 29:2, 31:11
**practice** [3] - 2:12, 19:18, 19:22
**preference** [1] - 20:5
**preferences** [1] - 39:19
**prefers** [1] - 47:14
**preparation** [1] - 36:22
**prepared** [18] - 11:23, 12:12, 17:2, 18:19, 19:6, 19:10, 19:13, 20:1, 31:22, 31:23, 32:2, 32:4, 34:5, 34:7, 35:18, 36:6, 39:14, 49:3
**preponderance** [3] - 21:8, 21:18, 22:24
**prescribed** [1] - 7:3
**present** [2] - 25:19, 36:17
**presented** [2] - 19:9, 27:15
**presentence** [16] - 2:25, 12:11, 16:4, 17:12, 17:15, 17:21, 18:19, 18:22, 19:11, 20:6, 20:7, 32:2, 32:4, 32:7, 34:5, 50:9
**presenting** [3] - 36:2, 37:6
**preserved** [2] - 12:2, 26:21
**previously** [1] - 49:9
**primarily** [1] - 47:12
**print** [2] - 18:6, 24:9
**priority** [1] - 36:19
**prison** [15] - 9:24, 13:3, 13:4, 13:8, 13:20, 14:16, 14:17, 14:22, 15:11, 16:5, 16:23, 43:17, 44:16, 48:9, 51:6
**PROBATION** [5] - 17:1, 17:20, 23:13, 24:8, 34:14
**probation** [7] - 12:10, 17:5, 17:14, 17:18, 18:25, 34:11, 50:12
**problem** [3] - 18:4, 23:12, 23:13
**problematic** [3] - 17:14, 17:18, 17:23
**problems** [5] - 5:21, 29:14, 29:15, 30:5
**proceed** [4] - 18:20, 19:12, 20:6, 31:22
**proceeding** [5] - 3:15, 3:21, 11:22, 26:1, 26:13
**proceedings** [2] - 2:2, 52:4
**process** [14] - 7:14, 14:11, 18:11, 18:14, 24:25, 30:11, 30:12, 30:21, 35:3, 38:16, 44:23, 47:14, 47:16, 51:1
**professional** [1] - 38:4
**progress** [1] - 18:14
**prohibit** [1] - 21:22
**prohibiting** [2] - 11:14, 45:22
**prolonged** [1] - 29:12
**promised** [1] - 27:8
**promises** [3] - 27:10, 31:11, 31:19
**proper** [1] - 37:5
**proposal** [2] - 38:19, 48:20
**propose** [1] - 34:10

**proposed** [13] - 17:6, 19:25, 31:5, 36:9, 41:20, 45:4, 45:12, 45:13, 49:6, 49:8, 51:2, 51:3, 51:4
**prosecutor** [7] - 8:5, 8:9, 8:11, 8:13, 9:3, 10:21, 28:6
**protection** [1] - 47:5
**Protective** [1] - 21:4
**protective** [6] - 21:10, 21:20, 22:3, 22:10, 23:1, 35:6
**PROULX** [2] - 1:19, 52:9
**prove** [9] - 7:9, 7:10, 7:15, 8:6, 8:9, 8:11, 8:13, 9:4, 9:10
**proved** [1] - 7:23
**provide** [1] - 22:13
**provided** [3] - 10:2, 46:1, 50:12
**provision** [6] - 20:24, 21:1, 21:5, 22:1, 22:6, 48:8
**Provision** [1] - 21:4
**provisions** [2] - 10:25, 25:23
**psychiatric** [1] - 6:5
**psychiatrist** [1] - 7:3
**public** [4] - 46:19, 47:1, 47:4, 48:12
**pull** [1] - 48:22
**purposes** [2] - 40:7, 40:8
**pursuant** [8] - 2:8, 2:10, 11:3, 21:8, 21:18, 22:24, 45:15, 47:25
**put** [10] - 15:2, 15:10, 15:18, 15:23, 16:17, 19:17, 23:14, 23:16, 40:17, 43:3
**puzzle** [1] - 41:16

## Q

**qualifies** [1] - 33:4
**questioned** [1] - 31:2
**questions** [5] - 4:3, 17:3, 20:21, 25:1, 38:7
**quickly** [1] - 18:3

## R

**raise** [3] - 3:22, 4:24, 27:5
**raised** [5] - 19:5, 29:10, 30:2, 49:3, 49:9
**range** [12] - 10:12, 10:13, 10:14, 10:15, 23:20, 23:24, 33:20, 33:23, 34:14, 34:17, 35:13, 35:23
**rather** [1] - 47:7
**reach** [3] - 44:20, 44:25, 48:7
**reached** [3] - 37:21, 40:4, 44:24
**read** [17] - 4:12, 4:16, 4:20, 5:6, 5:7, 5:9, 5:12, 21:5, 21:11, 21:15, 22:19, 37:25, 45:4, 45:12, 49:5, 49:14
**reading** [2] - 4:11, 8:22
**ready** [1] - 51:1
**real** [1] - 9:1
**really** [9] - 14:20, 18:11, 28:21, 30:6, 30:14, 37:3, 42:3, 42:16, 43:24
**reason** [7] - 11:21, 23:6, 26:19, 29:17, 32:24, 33:4, 45:2
**reasonable** [4] - 7:10, 7:24, 8:21, 25:10
**reasons** [2] - 19:21, 45:13
**rebuild** [1] - 41:15
**recapitulate** [1] - 23:21
**receive** [2] - 9:21, 11:7
**received** [1] - 28:18
**receiving** [1] - 15:7
**recent** [1] - 29:23
**recently** [2] - 6:8, 6:10
**recess** [1] - 51:9
**recognition** [1] - 48:2
**recognize** [2] - 18:10, 40:22
**recognizes** [2] - 40:21, 48:3
**recommend** [1] - 6:13
**recommendation** [2] - 35:15, 35:19
**recommendations** [1] - 14:18
**record** [15] - 4:6, 17:8, 19:17, 20:3, 20:12, 23:22, 32:23, 33:2, 37:10, 45:9, 46:16, 46:25, 49:6, 50:25
**recorded** [1] - 24:6
**redemption** [1] - 46:23
**reduce** [1] - 33:18
**references** [1] - 29:13
**reflect** [1] - 34:10
**Reform** [1] - 45:15
**regard** [1] - 35:6
**rehabilitation** [1] - 46:23
**reinstated** [2] - 12:2, 20:16
**reject** [1] - 3:11
**relatively** [2] - 6:8, 6:10
**relax** [1] - 6:19
**relayed** [1] - 39:2
**relaying** [1] - 39:18
**release** [14] - 9:23, 9:24, 11:13, 17:7, 17:8, 34:19, 35:11, 38:22, 45:6, 45:20, 45:25, 46:1, 49:7, 49:24
**rely** [1] - 23:22
**relying** [1] - 39:18
**remain** [6] - 3:14, 3:20, 4:23, 25:16, 25:17, 30:21
**remembering** [3] - 4:12, 4:13, 5:7
**rendered** [1] - 48:23
**renewal** [1] - 22:15
**report** [16] - 2:25, 12:12, 16:4, 17:12, 17:16, 17:21, 18:19, 18:22, 19:11, 20:6, 20:7, 32:2, 32:4, 32:8, 34:5, 50:9
**REPORTED** [1] - 1:19
**Reporter** [1] - 1:20
**represent** [1] - 25:13
**representations** [3] - 24:5, 34:6, 34:7
**request** [2] - 22:2, 22:9
**require** [1] - 48:14
**required** [3] - 9:22, 9:25, 50:15
**reservations** [1] - 37:8
**resolution** [4] - 37:11, 37:13, 41:20, 41:21
**resolve** [1] - 14:13
**resolved** [2] - 12:20, 13:25
**respect** [16] - 7:6, 23:19, 28:25, 29:1, 29:2, 32:15, 34:8, 34:19, 34:23, 35:22, 36:8, 37:16, 38:8, 44:5, 50:1, 50:5
**responsibilities** [1] - 38:7
**responsibility** [1] - 33:18
**restitution** [3] - 10:3, 45:24, 50:16
**restrain** [1] - 43:24
**retroactively** [1] - 26:17
**review** [13] - 20:25, 25:5, 26:1, 26:6, 26:13, 26:21, 26:23, 27:5, 32:22, 34:25, 35:9, 35:10
**reviewed** [3] - 12:10, 23:20, 46:2
**reviewing** [1] - 45:8
**revolve** [1] - 29:15
**Rights** [1] - 38:8
**rights** [8] - 2:20, 3:6, 12:2, 12:3, 25:5, 25:6, 26:21, 28:10
**risk** [3] - 8:14, 16:19, 47:1
**road** [1] - 46:18
**Robin** [1] - 43:11
**roster** [1] - 15:16
**Rule** [4] - 2:11, 11:3, 19:6, 19:11
**rule** [4] - 26:6, 26:16, 26:18, 26:22
**ruled** [1] - 29:5
**rulings** [3] - 24:12, 24:16, 32:15

## S

**sadly** [1] - 42:1
**sat** [1] - 14:1
**satisfied** [4] - 18:25, 28:17, 28:24, 34:11
**saw** [1] - 40:20
**scheduled** [1] - 38:20
**school** [1] - 4:7
**score** [1] - 34:4
**scores** [1] - 46:15
**SEAN** [1] - 1:12
**seated** [6] - 2:3, 3:14, 3:20, 3:22, 4:23, 30:21
**second** [4] - 8:9, 11:12, 45:20, 46:15
**Section** [8] - 7:20, 21:4, 21:9, 21:18, 21:25, 22:10, 22:24, 30:23
**section** [8] - 8:3, 9:7, 9:11, 10:24, 11:1, 11:4, 23:8, 47:25
**see** [6] - 8:2, 16:23, 17:23, 18:9, 18:14, 33:15
**seem** [1] - 34:3
**segregation** [2] - 13:7, 16:8
**send** [3] - 15:9, 17:6, 18:2
**sense** [2] - 10:15, 11:18
**sent** [1] - 9:24
**sentence** [60] - 10:11, 10:15, 10:16, 10:23, 11:7, 11:8, 11:10, 12:6, 12:12, 16:3, 17:17, 18:22, 19:19, 20:18, 21:11, 24:16, 24:18, 24:19, 25:25, 26:2, 26:19, 29:2, 32:7, 33:22, 35:5, 35:20, 36:7, 36:9, 37:18, 38:21, 39:11, 40:18, 40:23, 41:2, 41:17, 42:2, 42:18, 44:16, 45:4, 45:5, 45:7, 45:12, 45:14, 45:16, 45:18, 46:21, 47:5, 47:7, 47:8, 47:10, 48:9, 48:13, 48:14, 48:24, 49:3, 49:5, 49:8, 49:14
**sentenced** [1] - 45:17
**sentences** [1] - 11:21
**sentencing** [40] - 2:13, 3:10, 10:9, 10:12, 10:13, 11:18, 12:9, 12:17, 15:22, 19:15, 19:24, 20:2, 22:12, 23:20, 23:23, 23:24, 24:14, 24:25, 26:20, 30:13, 31:22, 31:24, 32:11, 32:13, 33:12, 35:13, 35:15, 35:19, 35:23, 37:14, 37:24, 39:11, 40:7, 46:3, 46:4, 47:2, 49:25, 50:2, 50:5
**Sentencing** [2] - 11:1, 45:15
**SENTENCING** [1] - 1:8
**serious** [10] - 8:24, 33:2, 46:9, 46:10, 46:11, 46:12, 46:14, 46:16, 46:19, 48:7

**serve** [2] - 9:22, 38:20
**served** [2] - 11:8, 45:18
**service** [1] - 8:7
**services** [1] - 50:20
**serving** [2] - 11:11, 47:11
**session** [1] - 2:4
**set** [5] - 18:5, 22:15, 31:12, 31:20, 35:15
**settled** [1] - 28:4
**shall** [4] - 45:17, 45:21, 45:23, 45:24
**shine** [1] - 41:2
**short** [6] - 21:5, 34:25, 35:4, 45:7, 50:19, 51:7
**shorter** [3] - 15:12, 15:19, 16:2
**showing** [1] - 48:5
**SHU** [14] - 13:5, 13:12, 13:18, 13:24, 14:1, 15:3, 15:7, 15:10, 15:19, 15:23, 16:1, 16:5, 18:12
**signed** [1] - 5:12
**significant** [4] - 42:9, 42:10, 46:6, 47:1
**silence** [1] - 25:18
**silent** [2] - 25:17
**similar** [1] - 48:20
**sincere** [1] - 48:3
**single** [1] - 4:4
**situation** [2] - 13:13, 41:5
**small** [1] - 39:16
**smart** [3] - 40:15, 41:11, 42:10
**solitary** [2] - 12:21, 15:8
**someone** [2] - 15:11, 26:17
**sometimes** [2] - 4:13, 5:6
**soon** [2] - 12:15, 16:23
**sorry** [2] - 4:22, 43:14
**sort** [3] - 27:20, 40:6, 41:15
**special** [7] - 9:25, 11:13, 34:22, 45:21, 48:11, 50:13, 50:14
**specific** [1] - 33:15
**specified** [2] - 22:16, 45:25
**specifies** [1] - 2:10
**specify** [1] - 34:17
**Speedy** [1] - 27:3
**spend** [4] - 13:17, 18:12, 18:13, 44:3
**stand** [1] - 24:6
**standard** [4] - 17:16, 18:6, 20:25, 34:22
**start** [1] - 6:11
**started** [2] - 6:8, 6:10
**state** [7] - 11:8, 12:15, 14:22, 16:23, 40:18, 45:13, 45:18
**statement** [4] - 8:22, 8:23, 19:16, 23:22
**statements** [3] - 9:1, 31:12, 31:20
**STATES** [4] - 1:1, 1:3, 1:10, 1:13
**States** [3] - 1:20, 2:5, 26:15
**statute** [4] - 8:3, 22:16, 23:9, 40:7
**statutory** [1] - 47:8
**stay** [1] - 3:22
**Steinberg** [1] - 1:15
**still** [7] - 12:16, 19:22, 30:18, 40:17, 41:12, 43:14
**stipulated** [1] - 36:7
**stipulation** [1] - 47:24
**Stipulations** [1] - 11:2
**stomach** [1] - 6:14
**stop** [1] - 11:22
**Stratford** [3] - 12:22, 13:21, 16:14
**Strattera** [1] - 6:6
**Street** [1] - 1:21
**strong** [1] - 48:18
**strongly** [2] - 44:19, 47:14
**structured** [1] - 44:19
**struggled** [1] - 46:7
**struggles** [2] - 30:7, 42:14
**stuff** [1] - 7:14
**subject** [4] - 13:7, 22:15, 48:9, 49:5
**subjected** [2] - 11:12, 11:17
**submitted** [1] - 51:2
**subpoena** [1] - 25:14
**subsequently** [1] - 51:5
**substance** [1] - 31:8
**substances** [1] - 6:24
**substantial** [5] - 8:14, 33:2, 38:20, 46:24, 48:21
**substantially** [1] - 46:7
**substantiated** [1] - 12:24
**substantive** [1] - 28:2
**suffer** [2] - 42:8, 42:9
**suffers** [1] - 42:11
**sufficiently** [1] - 32:25
**suggested** [3] - 17:17, 28:6, 28:20
**suggestion** [1] - 16:13
**suggests** [1] - 48:3
**summarize** [1] - 32:11
**summarized** [1] - 7:25
**superseding** [2] - 4:19, 7:18
**supervised** [12] - 9:23, 9:24, 11:13, 17:7, 34:19, 35:10, 45:6, 45:20, 45:25, 46:1, 49:6, 49:24
**support** [2] - 41:13, 41:14
**supported** [1] - 43:13
**supportive** [1] - 38:11
**suppress** [1] - 29:5
**suppression** [1] - 27:2
**Supreme** [1] - 26:15
**sworn** [1] - 5:2
**sympathetic** [1] - 16:9
**system** [1] - 16:1

## T

**table** [1] - 48:23
**tap** [1] - 43:18
**technically** [3] - 15:15, 16:14
**term** [6] - 9:20, 9:23, 11:12, 45:17, 45:20
**terms** [14] - 3:7, 10:5, 11:23, 20:9, 20:10, 20:13, 22:16, 31:23, 34:19, 37:16, 37:18, 40:9, 45:25, 46:1
**testified** [1] - 5:2
**testify** [3] - 25:15, 25:20
**THE** [181] - 1:9, 1:12, 1:14, 2:3, 2:7, 3:17, 3:19, 3:20, 3:25, 4:1, 4:8, 4:10, 4:12, 4:13, 4:14, 4:15, 4:21, 4:22, 5:4, 5:5, 5:10, 5:11, 5:13, 5:14, 5:16, 5:17, 5:18, 5:19, 6:3, 6:7, 6:10, 6:16, 6:18, 6:21, 6:23, 6:24, 7:1, 7:2, 7:4, 7:5, 7:7, 7:8, 7:12, 7:13, 9:6, 9:7, 9:13, 9:14, 9:16, 9:17, 10:7, 10:8, 10:10, 10:11, 10:18, 10:19, 12:5, 12:7, 12:18, 13:15, 14:1, 14:6, 14:12, 14:15, 14:16, 14:21, 14:23, 14:24, 15:1, 15:2, 15:4, 15:9, 15:14, 15:18, 15:20, 15:21, 16:7, 16:9, 16:12, 16:13, 16:21, 17:2, 17:25, 18:8, 18:9, 19:4, 19:12, 20:4, 20:5, 20:8, 20:9, 20:20, 20:21, 20:23, 20:24, 21:16, 22:9, 22:14, 22:18, 23:3, 23:5, 23:10, 23:11, 23:18, 24:1, 24:3, 24:9, 24:10, 24:11, 24:21, 24:22, 25:3, 25:4, 25:11, 25:12, 25:22, 25:23, 26:8, 26:9, 26:24, 26:25, 27:7, 27:8, 27:11, 27:12, 27:14, 27:15, 27:22, 28:5, 28:8, 28:15, 28:16, 29:3, 29:4, 29:10, 30:3, 30:17, 30:18, 30:19, 30:20, 31:1, 31:2, 32:5, 32:6, 32:9, 32:10, 32:23, 33:11, 33:22, 33:25, 34:3, 34:16, 34:24, 35:8, 35:18, 36:1, 36:6, 37:19, 38:6, 38:11, 38:18, 39:4, 39:9, 39:24, 41:23, 42:23, 43:15, 43:16, 43:21, 44:24, 45:2, 45:12, 47:23, 49:11, 49:13, 50:4, 50:7, 50:11, 50:14, 50:18, 50:19
**therein** [1] - 22:16
**Thereupon** [2] - 4:25, 51:9
**thinking** [5] - 36:14, 36:15, 37:11, 47:6
**third** [3] - 8:11, 11:16, 45:23
**thoughtful** [2] - 40:15, 41:11
**threat** [13] - 7:20, 8:8, 8:10, 8:12, 8:18, 8:20, 30:24, 39:21, 46:11, 48:10
**threat-type** [1] - 39:21
**threatened** [1] - 27:12
**threatening** [2] - 8:15, 33:14
**threats** [6] - 9:2, 31:13, 31:18, 46:10, 46:12
**three** [6] - 9:23, 21:10, 21:20, 22:14, 23:1, 26:10
**three-year** [4] - 21:10, 21:20, 22:14, 23:1
**throughout** [3] - 3:14, 3:21, 25:19
**ticket** [1] - 16:16
**tickets** [2] - 13:1, 13:2
**today** [33] - 2:19, 2:24, 3:5, 3:11, 3:18, 6:2, 6:25, 12:5, 12:13, 12:20, 13:20, 13:23, 14:14, 14:25, 15:9, 15:22, 16:3, 17:14, 17:17, 17:24, 18:7, 19:14, 22:12, 23:4, 24:20, 26:11, 28:21, 29:1, 31:23, 32:7, 36:17, 40:20, 47:9
**together** [1] - 23:16
**took** [3] - 4:8, 36:17, 43:12
**total** [2] - 34:9, 35:13
**transcription** [1] - 52:4
**transfer** [1] - 15:15
**transit** [1] - 13:1
**transport** [1] - 14:4
**Trazodone** [1] - 6:6
**treat** [2] - 10:14, 15:24
**Trial** [1] - 27:3
**trial** [11] - 2:14, 7:9, 7:23, 12:2, 25:7, 25:16, 25:19, 36:21, 37:17, 47:15, 48:18
**trialreporters@hush.com** [1] - 1:22
**tried** [2] - 42:16, 49:1
**troubled** [1] - 42:2
**true** [7] - 8:12, 8:18, 8:20, 8:21, 9:2, 39:20, 46:6
**try** [15] - 13:15, 14:10, 16:10, 18:1, 18:7, 18:10, 18:13, 27:9, 27:13, 36:10, 41:13, 41:14, 43:2, 43:13, 46:17

**trying** [1] - 28:20
**turn** [1] - 35:5
**two** [5] - 6:12, 6:14, 14:13, 28:4, 43:10
**type** [2] - 39:21
**typical** [1] - 22:20

## U

**ultimately** [1] - 3:11
**under** [23] - 6:25, 7:17, 8:21, 8:23, 19:6, 19:11, 19:12, 21:24, 22:10, 22:15, 22:16, 23:8, 27:3, 28:3, 31:7, 33:13, 33:17, 37:14, 38:8, 39:11, 41:5, 47:17
**underlying** [1] - 19:19
**understatement** [1] - 37:1
**understood** [3] - 13:19, 37:9, 46:12
**undisputed** [1] - 34:6
**unfair** [1] - 48:22
**unfortunately** [3] - 40:17, 41:12, 43:20
**unique** [2] - 19:2, 37:15
**unit** [3] - 15:7, 43:10, 43:17
**UNITED** [4] - 1:1, 1:3, 1:10, 1:13
**United** [3] - 1:20, 2:5, 26:15
**unlawful** [1] - 8:25
**unless** [3] - 2:24, 13:24, 25:9
**unpleasant** [1] - 37:2
**unsubstantiated** [1] - 16:17
**up** [17] - 9:23, 13:20, 15:5, 16:22, 17:6, 18:2, 18:5, 24:9, 24:22, 25:4, 28:9, 32:1, 38:6, 42:6, 43:3, 43:14, 48:2
**ups** [1] - 40:13
**USC** [7] - 7:20, 21:9, 21:18, 21:25, 22:24, 30:23, 47:22

## V

**variance** [1] - 36:2
**various** [4] - 24:15, 28:19, 29:11, 29:14
**verbiage** [1] - 43:4
**versus** [1] - 2:5
**Victim** [10] - 11:14, 21:9, 21:11, 21:19, 21:20, 21:23, 22:25, 23:1, 34:23, 45:22
**victim** [7] - 36:15, 37:14, 37:22, 39:17, 43:7, 47:13, 48:12
**victims** [1] - 41:6
**Victims** [1] - 38:8
**view** [7] - 3:1, 29:23, 36:22, 41:10, 42:7, 46:19
**viewed** [3] - 8:15, 32:19, 32:20
**violate** [1] - 9:24
**violating** [1] - 30:23
**violation** [3] - 7:20, 44:14, 48:8
**violence** [2] - 8:25, 9:2
**virtue** [1] - 33:8
**voluntarily** [3] - 2:20, 31:16, 50:8
**voluntary** [1] - 29:20
**vote** [1] - 28:13
**vs** [1] - 1:4

## W

**wait** [3] - 11:18, 14:12, 22:11
**waited** [1] - 13:5
**waiting** [1] - 14:2
**waive** [10] - 2:20, 18:23, 18:24, 19:3, 19:6, 19:10, 22:4, 23:7, 32:3, 47:24
**waived** [1] - 50:9
**waives** [3] - 3:5, 17:15, 21:24
**waiving** [4] - 17:21, 20:6, 23:13, 25:24
**walk** [1] - 43:2
**wants** [5] - 38:12, 38:17, 40:1, 44:7, 47:15
**warrants** [3] - 21:10, 21:19, 22:25
**ways** [2] - 37:24, 41:7
**week** [1] - 14:12
**weigh** [2] - 39:20, 47:2
**weighed** [2] - 36:13, 37:5
**whereas** [1] - 16:2
**whole** [1] - 13:13
**willing** [12] - 2:16, 11:22, 14:17, 18:1, 18:10, 18:23, 18:24, 19:12, 19:22, 19:24, 43:3
**willingness** [2] - 48:2, 48:6
**wish** [3] - 30:18, 38:1
**withdraw** [2] - 12:1, 20:15
**within-guideline** [1] - 35:19
**witness** [1] - 36:24
**witnesses** [2] - 25:14, 25:20
**words** [1] - 21:14
**writ** [2] - 14:18, 15:15
**writ-ing** [1] - 14:18
**written** [1] - 31:13

## Y

**year** [7] - 11:13, 19:10, 21:10, 21:20, 22:14, 23:1, 45:20
**years** [4] - 9:21, 9:23, 43:10, 44:25
**yesterday** [3] - 3:3, 23:20, 36:12
**yourself** [2] - 36:1, 43:24

## Z

**zero** [1] - 39:16